CHOUTEAU & VALLE, Defendants in Error, *vs.* STEAMBOAT ST. ANTHONY, Plaintiff in Error.

1. Although a steamboat may be liable as a common carrier, for packages of money, yet, there can be no such liability, if the service was to have been performed without hire.
2. The act of a captain of a boat, in taking money for transportation, is not *prima facie* evidence of the liability of the boat.

Chouteau & Valle *v.* Steamboat St. Anthony.

3. To make the boat, or its owners liable, in such a case, it must be shown that it was within the scope of the usual employment and services of the boat, for the captain to carry packages of money for hire, on account of the owners. If the captain carries them on his own account and responsibility, the owners are not liable.

### Error to St. Louis Court of Common Pleas.

*E. Bates*, for plaintiff in error.

I. The first paragraph of the plaintiff's instruction is erroneous, because it assumes that the boat was necessarily liable, if the captain undertook to carry and deliver the bank notes and failed to deliver a part of them, although the petition does not charge any consideration, and the testimony does not show any.

II. The second paragraph is erroneous :

1. Because it announces a general proposition of law, no more applicable to this case than to any other.

2. Because it assumes, that the captain or clerk of a boat can bind the boat, by the simple act of receiving for transportation any kind of packages, without any reference to the character of the packages, or the nature of the business in which the boat is engaged.

3. Because it assumes that the bare delivery of a package to the captain or clerk makes a contract of affreightment between the deliverer of the article and the boat.

III. The last paragraph of plaintiff's instruction is erroneous:

1. For reasons above alleged, as to the second paragraph.

2. It leaves to the jury the determination of the question of law, what officers of the boat are *authorized officers*, so as to bind the boat, by the simple act of receiving a package for transportation. But the main objection is, that the court below refused the third and fourth instructions moved by defendant below.

IV. By refusing the *third* instruction, the court affirms, as a legal proposition, that the boat is liable upon the implication of a contract with its officer, in a matter in which the boat had no interest, and could not receive profit ; the act to be done being a mere courtesy, not to be paid for. A party

14—VOL. XVI.

may bind himself by any contract that he chooses to make, if it be lawful, and infringe not upon the rights of others. But an implied contract is always based upon a consideration, and inferred from it; so that, without consideration, there can be no implied contract.

V. By the refusal of the defendant's fourth instruction, the court below affirms as law, that the boat is liable for the *crimes* of its officers, as well as for the imperfect and negligent discharge of their duties. This court has decided otherwise. 10 Mo. Rep. 135, *Price* v. *Thornton.*

VI. The petition sets forth a special contract, made by the plaintiff with Captain Montfort, and the only breach alleged is, the non-delivery of the article agreed to be conveyed. And without any *proof* of such a contract, and with proof that there was no consideration, the Court of Common Pleas holds the boat liable for both the courtesies and the crimes of its captain.

*C. B. Lord*, for defendant in error.

I. The instructions given by the court below contain a correct exposition of the law applicable to the facts of this case, as laid down by this court. *Chouteau & Valle* v. *Steamboat St. Anthony*, 11 Mo. page 226 ; same case, 12 Mo. 389.

II. The two instructions asked for by the appellants and refused, were very properly refused. There was no evidence on which to base the instructions. *Vaulx* v. *Campbell*, 8 Mo. 224.

The boat is liable, unless there was an express stipulation, that she should not be liable ; or, in other words, *a special contract.* Such special contract, being an exception to the general rule, must be strictly proved. *Hollister* v. *Nowlen*, 19 Wend. N. Y. Rep. 234.

It has been held that the carrier could not restrict his liability, even by a special contract ; but, however this may be, the carrier, who attempts to limit his liability, will be held to *strict proof* of the contract so limiting it. *Nicholson* v. *Willan*, 5 East. 513. Angell on the Law of Carriers, 158, 221, 222.

But there was no evidence of any contract limiting the re-

sponsibility of the carrier.   What Capt. Montfort *considered* about the matter, after the package was lost, can have no influence here, even if he does not pretend to say that Chouteau & Valle understood any such thing as that it was to be carried out of courtesy.

If, by the latter part of the second instruction refused, it is intended to assert, that the boat was not liable, because the money was lost by the theft or embezzlement of the captain or clerk, we say that such proposition is not law.   Story on Bail. 319, sec. 470.   Angell on the Law of Carriers, sec. 148, 149.   Livermore on Agency, 358.

The authorities all agree that the carrier is liable for all losses that do not fall within the excepted cases, of the act of God and public enemies.   Surely, he is liable, if he steal the goods, or if his agent steal or embezzle them.   Story on Bail. sec. 448, case there cited. 2 Kent, 598.   10 John. Rep. 1.   Angell, sec. 148.

The instruction, under the evidence, put the case properly before the jury, and this court will not disturb the finding. 13 Mo. 286, 465, 507.

That owners are liable when money was abstracted by their agents, who had it in charge, and that it applies to carriers by water as well as by land.   4 N. H. 304.   6 Johns. 170.   8 S. & Rawle, 533.   10 Johns. 1.   1 Dev. & Bat. 273.   1 Conn. 487.   11 Pick. 41.   5 Day, 415.   2 Ver. 92.

SCOTT, Judge, delivered the opinion of the court.

This was a proceeding begun by the plaintiff against the defendant, for an alleged breach of a contract, by which the defendant stipulated to carry from St. Louis and deliver at Pell's Landing, in Illinois, the sum of $572 in bank notes.   The statement charged, that the said sum in bank notes was delivered on board said boat, in a sealed package, to the clerk, in pursuance to said agreement, and that a portion of the said sum was never delivered.   No consideration was alleged in the contract for the transportation of the package.   The delivery of the package to the clerk of the boat was proved, and also

the abstracting of a portion of the money, amounting to $420. The captain of the boat testified, that no compensation for carrying the package was expected or received by him; that packages of money were usually carried for the customers of the boat as a courtesy; that no compensation is charged, unless there is a bill of lading; that he had been a captain for seventeen years and had carried a half million of dollars, but never charged hire, unless there was a bill of lading. It was not customary to carry money for strangers without compensation. Two other captains of boats were examined as witnesses, in relation to the custom of carrying packages of money. The amount of their evidence was, that, as a matter of policy, they did not charge customers of the boat. Strangers were charged. Receipts are given where there is a stipulated price. The patronage of those was expected, for whom money was gratuitously carried. The impression was, that there was a right to charge, whether receipts were given or not. There was no evidence that there was any receipt or bill of lading for the money in controversy. On the supposition that the boat was liable, there was ample evidence to establish her liability. There was a verdict for the plaintiff for the sum claimed, and judgment, upon which this writ of error is sued out. The following instructions were given by the court:

"If the jury believe from the evidence, that the defendant, by its captain, undertook to carry and deliver the bank notes, as stated in the complaint, and that the said bank notes, or a part of said bank notes, were not delivered as agreed, then, the plaintiffs are entitled to recover, unless the defendant has proved to the satisfaction of the jury, that it was the general custom of the trade for boats not to carry money, or money packages, or that it was the particular custom of the defendant not to carry packages of money, which custom was known to the plaintiffs, and for the captain to carry money or money packges, not on account of the boat, but on account of himself alone."

"That the captain or clerk of a boat, in receiving articles

or packages for transportation, is presumed to contract for the boat, and the boat will be bound for such contract of affreightment, unless it is proved that it is the general custom of the trade, or the particular custom of the boat in question, for the captain or clerk to make an individual contract for himself alone, and not for the boat, to carry the articles or packages in question, which particular custom is known to the other contracting party."

" If the jury find from the evidence, that it was the general custom of the trade, for boats not to carry money packages, or that it was the particular custom of the defendant, for the captain to make individual contracts for himself and not for the boat, to carry packages of money, and that such particular custom of the defendant was known to the plaintiffs, then they will find for the defendants."

" If the jury find for the plaintiffs, they will assess the damages at the amount of money or bank notes which were put on the boat and not delivered, with interest on the money so withheld, from the time when the same should have been delivered."

" If the package was delivered to an authorized officer of the boat, for transportation and delivery, and received by said officer for said purpose, then there was an implied contract of affreightment."

The following instructions, asked by the defendant, were given by the court :

"1. To charge the boat in this case, it must be proved to the satisfaction of the jury, that there was a contract of affreightment, by which the boat was bound to carry and deliver the money mentioned in the declaration, and Chouteau & Valle were bound to pay freight on the same."

" 2. Such contract may be proved either by direct evidence, or by circumstances, from which the jury may infer the contract."

The following instructions, asked by the defendant, were refused by the court :

" 3. If the jury believe from the evidence, that at the time the letter was delivered on board of the boat at St. Louis, both parties considered the carrying of the letter a mere act of courtesy, not to be paid for, then the plaintiff is not entitled to recover."

" 4. If the jury believe from the evidence, that the letter was to be carried as a matter of courtesy, and that the captain or clerk stole a part of the money from the letter, the commission of that crime does not make the boat liable."

1. There is no doubt that a steamboat may be liable as a common carrier, for packages of money. It is equally well settled, that no person is a common carrier, in the sense of the law, who performs services without hire. If no hire is to be given for services, in relation to the property of others, the person performing them may become liable as bailee, but his obligations are very different from those of a common carrier. It is not necessary that the compensation should be a fixed sum or agreed upon ; the owner of the property will be liable on a *quantum meruit*, for services rendered by a common carrier. Nor is it necessary that the thing should be entered on the freight list, or that the contract be verified by a written contract, though the omission of these circumstances may have considerable weight in such a controversy as the present, in determining whether the owners of the boat are liable as common carriers, or whether the responsibility of the contract rested on the captain alone, as the special bailee of the owner of the money.

2. When this case was formerly here, 11 Mo. Rep., the law with regard to the liability of steamboats, as common carriers of packages of bank notes, was correctly stated ; but the inference deduced from it, that the act of the captain, in taking the money for transportation, was *prima facie* evidence of the liability of the boat, we do not think is warranted by the authorities. All the cases that have been consulted relative to this question, while they maintain that a boat may be liable as a common carrier for carrying bills, yet hold, that it must be

the usage to carry them for hire, or that it was the known usage of the trade that the boat should so carry them. Neither the weight nor bulk of packages of bank notes requires the accommodation of a steamboat, nor are they objects of freight to warrant the expense of building them. The employment of a boat may be the transportation of passengers only, or any particular commodity, or of passengers and merchandize. When a boat has a particular trade in which she is employed, her agents cannot impose liabilities on her owners, by undertaking to transport articles of a nature entirely different from those which she has been accustomed to carry, and the carriage of which is attended with greater risk and responsibility. No one would maintain that the owner of a ferry, whose ordinary business is to carry passengers and their baggage, would be liable for money entrusted to his boatman, without the knowledge of the owner, and without any compensation to him. Nor would a carrier by wagon be liable for money entrusted to his driver, to be delivered to another, without the consent of the owner of the wagon, although the driver might receive a compensation for his services. The case of *Sheldon* v. *Robinson*, 7 N. H., maintains, that the driver of a stage coach, whose proprietors were common carriers of passengers for hire, did not, by carrying packages of money and bank bills, for hire, which he received on his own account, become himself responsible as a common carrier, but was only bailee for hire and subject to the liability of that relation. This must be on the ground, that, in receiving the money, he did not act as agent for the proprietors, and that they were not responsible for his acts. The transportation of passengers, or of merchandize, or of both, does not necessarily imply, that the owners hold themselves out as common carriers of bank bills. The indemnity for the risk in carrying notes must be a sum sufficient to cover the guaranty and insurance of such an undertaking. The door that would be open for collusion, if sealed packages were received, taking the sum as stated by the party delivering it as correct, would place the fortunes of boat owners at the mercy

of those whose depravity would prompt them to the commission of fraud. The case of *Allen* v. *Sewall*, 2 Wend., decided in the Supreme Court of New York, was placed upon the ground, that it was the usage of boats to carry packages of bank bills, and though the avails of such a trade were a perquisite to the captains, yet, they were regarded as a part of their compensation paid to them, and so a profit to the owners. This case was reversed in the Court of Errors, 6 Wend., and although something was said in relation to the fact, that the owners were incorporated, only for the purpose of carrying goods, wares and merchandize, and that bank notes were, therefore, not among the objects for whose transportation the company was incorporated yet, it is obvious, that the determination rested mainly on general principles, and that the judgment would have been the same had the charter been out of the way. And so it appeared to Judge Story, who, in the case of *The Citizens' Company* v. *The Nantucket Steamboat Company*, 2 Story, C. C. Rep., says : " If I were compelled to choose between the relative authority of these decisions, upon the ground of the reasoning contained therein, I should certainly have deemed that of the Court of Errors the best founded in the principles of the law. The reasoning of the court below, in that case, seems to me to have been founded mainly upon an assumption of the very point in dispute, that is, whether the owners of the steamboat were common carriers for hire ; for no one can well doubt, that they were not liable therefor, if the ordinary employment of the steamboat, on account of the owners, was confined to passengers and common merchandize for hire, and that the carriage of money was a personal perquisite of the master, upon his sole account, and he received the same and pay therefor, not by their authority, or as a part of their business, or by their command, but simply at his own personal risk as special bailee."

3. In the case under consideration, the captain of the boat testifies, that he carried the package as an act of courtesy ; that no pay was expected or received by him. The evidence of the

clerk going to establish the custom of boats to carry bank bills for hire, we cannot think sufficient to impose upon the boat owners the liabilities of common carriers. Customers and friends were not charged. Hire was taken from strangers, but, on whose account, it does not appear. We are ignorant whether it was a perquisite to the officers, or credited to the owners of the boat. As to this particular boat, the captain testifies that no charge was ever made, unless a receipt was given for the package. It should be shown that the captain held himself out as agent for the boat, in undertaking to carry bank bills, as being within the usual scope of the employment and services of the boat ; and that the owners of the boat knew that the hire was on their account, for if it was taken on his own account, and on his own responsibility, they were not liable. Judge Ryland concurring, the judgment will be reversed—Judge Gamble not sitting.