WHITMORE & OTHERS, Plaintiffs in Error, *vs.* THE STEAMBOAT CAROLINE, Defendant in Error.

1. It is not *prima facie* within the scope of the employment of a steamboat, or the authority of her officers, to carry specie for hire; and in order to hold the boat or her owners liable for the loss of money entrusted to the clerk by a passenger, a known and established *usage* for steamboats to carry money for hire on account of the owners, must be shown.   (*Chouteau & Valle* v. *Steamboat St. Anthony*, 16 Mo. Rep., affirmed.)

2. The implied undertaking of a common carrier to carry the baggage of passengers, does not include more money than a reasonable amount to meet traveling expenses.

*Error to St. Louis Circuit Court.*

This was an action under the act concerning "boats and vessels," (R. C. 1845,) to recover the value of a bag of gold

20 513
71a 391

LAW SCHOOL LIBRARY

belonging to the plaintiffs, lost while in custody of the clerk of the steamboat Caroline, to whom, as alleged in the petition, it had been delivered for transportation from St. Louis to Pekin by an agent of the plaintiffs, who was a passenger on the boat.

At the trial before a jury, Sears, the plaintiffs' agent, testified that he received from the plaintiffs $1500 in gold to be invested for them in the purchase of wheat upon the Illinois river; that the gold was placed in a bag, and he went with it on board the steamboat Caroline, then lying at the port of St. Louis, bound for the Illinois river; that he applied for passage for himself, and delivered the bag of gold to the clerk, to be carried to his port of destination, and that the clerk received it; that he was informed the next morning that the safe of the boat had been robbed and the bag of gold taken. This witness further stated that he had known boats running from St. Louis up the Illinois river to take specie and be paid for it; that he had himself delivered money to clerks of boats to be carried and had paid for it, and had done this in one instance where he was a passenger on the same boat; but that he was not a river man, and only spoke from his personal knowledge. He also stated on cross-examination that when he went on board the defendant, he took passage to Bath or Havanna.

Pomeroy, a commission merchant in St. Louis, testified that his firm used to send money up the Illinois river to their customers for grain, but more recently had generally remitted through express companies; that they frequently had consignments of grain, with the request that the proceeds should be sent by the same boat, on her return, and in such cases, the boats did not charge any thing for carrying the money, but when the money was sent on transient boats, they would pay for it; that he only spoke of his own transactions, and did not know what the custom was.

Gregory, who had been a shipping clerk and salesman on the St. Louis levee for about six years, testified that it was the custom of boats running from St. Louis in the Illinois river trade to carry specie, when entrusted to them, as much as any

other kind of freight, sometimes gratuitously and sometimes for reward, and that money was usually delivered to the clerk of the boat. On cross-examination, he stated that it was customary for boats to carry money, whether the passenger was on board or not; that when the owner was on board as a passenger, no receipt was taken, and when no receipt was taken, the money was carried as a favor.

Smith, a clerk of plaintiffs, testified that he knew it to be the custom of boats running in the St. Louis and Illinois river trade to carry specie for reward and without reward; that receipts were sometimes taken and sometimes not; that he had shipped specie various times, sometimes taking bills of lading and sometimes not, always delivering it to the clerk of the boat; and that in cases where he had shipped specie, the owner did not accompany it.

This was all the evidence introduced by the plaintiffs, and the Circuit Court instructed the jury that, under it, they could not recover in this action. They submitted to a nonsuit, and after an unsuccessful motion to set it aside, sued out this writ of error. The cause was submitted on briefs.

*Glover & Richardson*, for plaintiffs in error. 1. When persons hold themselves out as common carriers, the legal presumption is that they are carriers for hire of all articles embraced within the general terms goods, wares and merchandise, *including specie;* and if any thing falling within the scope of these terms is excepted by them, the burthen is on them to establish the exception. (2 Kelly, 353. 2 Story's C. C. R. 34.) If specie is merchandise, and steamboats hold themselves out as carriers of merchandise, there is no more reason why a plaintiff should be required to prove specifically that the owner assented to the master's carrying specie, than that he specially assented to the carrying flour, or tea or silks. The presumption is, that the owner pays some attention to acts of his agents, and is aware of the usual course of business, and he must take the burthen of showing the contrary if he asserts it. (1 Flor. Rep. 403. 2 Story's C. C. R. 37. 18 Ver-

mont, 140. 2 Harrington, 48.) This is reasonable; for to bring home to the owners express proof of authority given by them to the master to carry specie or any thing else must in general be impossible; whereas, if the owner has limited the power of his agent, he can always show it. (12 Ala. Rep. 352. 23 Vermont, 186, 206.) That some persons, under peculiar circumstances, were not charged for carrying specie, or that passengers who had paid fare were not charged is of no importance, if it was within the scope of the boat's employment to carry it for hire. The facts are true of every other sort of freight. Thus, a passenger who accompanies a shipment of grain often pays no passage money. This case is unlike many others in this: There was no proof by the defendant as to what was the general employment of the boat—no showing that the master had been forbidden to carry specie—nothing to limit the responsibility of the boat. If it was shown to be the usage of trade for boats to carry money for all persons indifferently, as well as goods, then the responsibility peculiar to the common carrier extends to both. (Angell on Carriers, p. 213, §209.)

It being proved that it was the known custom of boats in the trade in which the Caroline was running, to carry specie for hire, and that it was as much the course of trade there to carry specie for hire as any thing else, ought to and did put the *onus* on the defendants to show that they had not authorized the Caroline to carry it; or if not, the plaintiff had at least the right to insist before the jury that the owners must have known the course of trade.

There was no proof in this case that the master had any privilege to use the boat of the owners to carry any thing on his own personal account. The legal presumption then was, that whatever he did was for account of the boat.

But the master was the general agent of the owners, as such had power to contract to carry any thing usually carried in the trade where he was running, and even had he been privately instructed not to take specie, the vessel would have been bound

by his contract, unless the instruction was brought home to the shipper.

*Knox & Kellogg*, for defendant in error. 1. As there was no evidence that the boat was to carry the money for hire, or that the owners sanctioned the carrying of money for hire, the instruction of the Circuit Court was correct. (*Chouteau & Valle* v. *Steamboat St. Anthony*, 16 Mo. Rep. 216.) 2. A steamboat, though a common carrier, is not liable for money which a passenger may have in his possession, except so much as is necessary or convenient for him. (Angell on Carriers, sec. 115.) 3. There is no such contract set forth in the petition of the plaintiffs, nor was there any such contract proved, as would sustain an action against the boat under the act concerning " boats and vessels." 4. There is a material variance between the petition and the proof. The petition states a contract for passage from St. Louis to *Pekin*. The evidence is that plaintiffs' agent took passage for *Bath* or Havanna. (Chitty on Plead. 333 and following.)

SCOTT, Judge, delivered the opinion of the court.

The instruction given at the instance of the defendant was proper. The evidence given established no usage for steamboats to carry money for hire. This case is similar to that of *Chouteau & Valle* v. *Steamboat St. Anthony*, (16 Mo. Rep. 216.) We see no reason for departing from the law as stated in that case. The evidence here shows what usually appears in actions of this sort, that persons are willing to have their money carried as a favor, and at the same time, to hold the boat liable for its loss. Freight or money must be proportioned to the risk assumed. No owner of a boat would permit her to carry money, without a reward compensating for the risk, if he was aware that he would be liable in the event of its loss. Persons use the captains or clerks of steamboats to carry money gratuitously, and hire is never heard of until the money is lost, and then some person is hunted up to prove that some times in the course of his life he carried money on a steamboat for

hire, and this is showing a usage. If boats would invariably charge a compensating hire for carrying money, and this was universally known, the business of carrying money by boats would soon be at an end. Persons cannot trust money with clerks to be carried as a favor, and afterwards, when the money is lost, be permitted to show that it was to be transported for hire. This thing of hire is scarcely ever heard of, but in case of loss, and then, to make the boat or owner liable, would be great injustice. There is no reciprocity in it. The boats, in this way, would be made public carriers for all the money entrusted to their officers for transportation, and their owners would receive no compensation for it. In no case in this court has any thing like a usage been established to carry money for hire by steamboats. If freight is charged for money as other merchandise, why are not bills of lading or receipts regularly made out as for other things? The owners of merchandise cannot make a secret bargain with the agents of a boat that their merchandise shall be transported gratuitously, and yet hold the boat liable as a common carrier. So, there is nothing in the idea that the officers, by carrying money as a favor, gain patronage for their boats. If one may do this, all may do it. All boats being subject to the same law and all charging hire for the transportation of money, one could not obtain an advantage over another in this respect.

The implied undertaking of a common carrier to carry the baggage of a passenger has its limitations, and does not extend beyond ordinary baggage, or such baggage as a traveler usually carries with him for his personal convenience. It is never admitted to include merchandise. Nor does the implied undertaking include a large sum of money. It cannot cover more than a reasonable amount necessary to pay traveling expenses. (Angel on Carriers, 116.)

With the concurrence of the other judges, the judgment will be affirmed.