## Case No. 6,340.

HELLMAN et al. v. HOLLADAY.

[1 Woolw. 365.] [1]

Circuit Court, D. Nebraska. Nov. Term, 1868.

COMMON CARRIER OF PASSENGERS, BAGGAGE, AND GOLD.

1. The case of Orange County Bank v. Brown, 9 Wend. 116, distinguished.

2. If a passenger surreptitiously introduce into a coach an article of great value, with the view of getting it carried for nothing, when the carrier is accustomed to charge for such service, he is guilty of a gross fraud, and in case of loss cannot recover.

3. But if, notwithstanding the passenger's intention to defraud him, the carrier learns the fact, and, knowing it, charges, and the passenger pays, for carrying the article as extra baggage, and for charges usual therefor, then the carrier is liable for the value of the article, in case of its loss.

4. It is for the jury to say, from the whole evidence, whether the carrier received the compensation knowing the baggage to contain gold.

[Distinguished in Humphreys v. Perry, 148 U. S. 627, 13 Sup. Ct. 719.]

Hellman & Cahn, partners, sued Holladay for $10,114, for gold dust of that value, lost

[1] [Reported by James M. Woolworth, Esq., and here reprinted by permission.]

while being transported on the defendant's stages. The circumstances, as detailed in the petition, were, briefly stated, these: The defendant was the proprietor of a line of stages and of a treasure express, running from Great Salt Lake in Utah via Denver in Colorado, to Omaha in Nebraska. Cahn took passage at Salt Lake for Omaha, and paid the usual fare, being $300; and having a quantity of gold dust, the defendant undertook to carry that for $5 per $1000 extra, which said Cahn then and there paid. Near Fort Bridger this gold dust was lost off the coach, by reason of the unskilful driving of the coach by the defendant's driver, who became intoxicated; and also because the gold dust was placed in the boot of the coach, and not there properly secured. To meet this case, the defendant in his answer alleged, that his "treasure express" was conducted by means of messengers, who accompanied all articles to be thereby carried, and used iron safes, and other precautions for carrying them safely, and the charges on articles so carried were at the rate of $50 per $1000; that all passengers on the coaches were advertised of that fact, and that the defendant would not be responsible for, and forbade the carrying of gold dust by passengers, because the line ran through a country little frequented, and where exposures to robberies and Indian attacks were great; that said Cahn introduced the gold dust into the coach surreptitiously, and paid for it as extra baggage, without informing the defendant's agents, and without their knowing that it was valuable; that Cahn placed his baggage in the boot of the coach, and gave to the driver the liquor by which he was intoxicated. The suit was originally commenced in one of the district courts of the late territory of Nebraska, and on the organization of the federal courts in the state was transferred to this court on account of the citizenship of the parties. At this term, it came on to be tried before the court and a jury. It appeared from the evidence that there were several passengers on board the coach, travelling in company with the said Cahn; that they had with them a large quantity of gold dust, for which, neither as treasure nor extra baggage, did they pay anything at Salt Lake City. They had proceeded in the stage some forty miles to a station known as Millersville, when the general superintendent and the local agent of the stage line came to the coach and told them that telegrams had been received from Salt Lake, that they had extra baggage; that the baggage must be weighed, and they must pay for whatever exceeded 100 pounds to the passenger, at prescribed rates as extra baggage. A good deal of baggage was taken out, weighed, paid for, and replaced.

The plaintiffs introduced evidence tending to prove that at this time Cahn told the general superintendent that he had the gold dust here sued for, and before his eyes placed it

HELLMAN (Case No. 6,341)

[11 Fed. Cas. page 1056]

in a carpet-bag, and the driver placed it in the boot; that he paid for it as extra baggage, with the full knowledge on the part of the defendant's agents of its nature. The defendant showed by the evidence the manner in which he carried treasure, the rates charged by him therefor, and the notice to passengers limiting his liability, as charged in his answer. He also introduced evidence tending strongly to show that the gold dust was surreptitiously and fraudulently introduced into the coach by Cahn at Salt Lake; that his agents neither there nor at Millersville knew his baggage contained articles of such value; and that he or his companions, with his assent and even encouragement, gave to the driver the liquor which he drank; and that he placed the carpet sack in the boot of the coach, or caused the driver to place it there, without knowing its contents.

The defendant requested the court to instruct the jury (among other things) as follows: "If the jury believe from the evidence that Cahn assisted or encouraged his fellow passengers in getting the driver drunk, that he caused him to put the carpet-bag containing the gold dust in the boot of the coach, the driver not knowing that it contained gold dust, that he surreptitiously introduced the gold dust into the coach at Salt Lake, to avoid paying the rates chargeable in the express, and at Millersville paid for it as extra baggage only, and at the rates chargeable therefor, then you will find for the defendant."

Redick & Briggs, for plaintiffs.
Mr. Poppleton and Mr. Woolworth, for defendant.

MILLER, Circuit Justice. I cannot give this request as drawn. There is evidence here which it ignores. It was evidently framed with the purpose of shutting out from the consideration of the case certain evidence introduced by the plaintiff. The credibility of that testimony is not for us to pass on. It is for the jury. The jury must be instructed upon the law as it stands on the whole of the evidence. The testimony which I refer to as not taken account of in the request is, that of the plaintiff tending to show that when the payment was made as for extra baggage, the defendant's agents knew that the carpet sack contained gold dust, and knowing that fact, charged for it only the rates usual for extra baggage.

I agree with the defendant's counsel that if Cahn introduced the gold into the coach secretly at Salt Lake, and attempted to get it carried for nothing, he was guilty of a gross fraud. If that were the whole of the case, he could not recover here. In this view of the case, it may upon the authorities be doubtful even whether it is incumbent to bring home to Cahn notice that the carrier would not be liable for gold thus carried.

In that view the case would, without any evidence, show an intentional concealment in order to escape payment for a service rendered to the passenger by the carrier. That would be a fraud; and the law would not aid the party practising it. It would be a fraud by which the passenger, without payment, would secure an advantage, and if he could recover for a loss, it would be a great advantage. It would be forcing a contract on a carrier which he did not make.

The case of Orange County Bank v. Brown, 9 Wend. 116, is precisely in point. A traveller on a steamboat on the Hudson river took $11,250 to be carried for the plaintiff. He placed it in his trunk, which, with its contents, was lost on board. The plaintiff sought to recover the money as lost baggage. Mr. Justice Nelson, in an able opinion, held that this amount of money was too large to come under the head of "baggage," and that an attempt to have it carried free of reward under the cover of baggage was an imposition upon the carrier, and that he was deprived of his just compensation, and subjected to unknown risks by such devices.

But that case and the many others in which it has been followed, is distinguishable from this in the particulars which I have mentioned. Here there is evidence tending to show that the carrier knew that the baggage contained the gold. If he did, he was not deceived. Cahn may have intended to deceive and defraud him. If he did, he failed to do so. If the carrier knew that the carpet sack contained the gold, and took not the usual rates chargeable for gold, but only such as were chargeable for ordinary extra baggage, then he was not defrauded. The Orange County Bank Case proceeds throughout on a state of facts which, as the plaintiffs claim, differs from that shown here. Whether they are right, we must leave it to the jury to say. This instruction does not do so, and we cannot give it as requested.

The other matters referred to in the request are properly submitted to the jury. I will give the request modified according to the views I have expressed.

The jury returned a verdict for half of the sum claimed, thus dividing the loss between the parties.