A. K. Root, Respondent, v. New York Central Sleeping-Car Company, Appellant.

St. Louis Court of Appeals, December 6, 1887.

1. Bailments — Sleeping-car Companies — Damages — Negligence. The duty of a sleeping-car company is that of a bailee for hire, and it is responsible only for the negligence of its servants in guarding the property of a passenger while he is asleep, or while he is necessarily absent from his berth.

2. ——— The company's liability extends only to a passenger's baggage and to such reasonable sum of money as he may require for the purposes of the journey, taking into consideration his condition in life and the surrounding circumstances.

3. ——— The company is not responsible for the loss of a sum of money in excess of such reasonable sum, even though the same be stolen by the company's servants.

4. ——— Contributory Negligence.—The company is responsible to the extent of such reasonable sum where the loss is occasioned by the theft of the company's servants, irrespective of the passenger's contributory negligence.

5. ——— If the loss be chargeable to the negligence of the company's servants in guarding the property, there can be no recovery if the passenger's negligence contributed directly to the loss.

6.   ———— A passenger who, without notice to the company's servants, leaves in his berth, in an exposed condition, a large sum of money which could easily be carried on his person, is, as a matter of law, guilty of contributory negligence.

APPEAL from the St. Louis Circuit Court, SHEPARD BARCLAY, Judge.

*Reversed and remanded.*

PATTISON & CRANE, for the appellant: If the loss occurred after the respondent had arisen and left his berth, and all the evidence shows such to have been the case, the respondent was then the custodian of his own valuables, and the demurrer to the evidence should, therefore, have been sustained. *Scaling v. Pullman Co.*, 24 Mo. App. 33; *Bevis v. Railroad*, 26 Mo. App. 19; *Whitney v. Pullman Co.*, 28 A. & E. R. R. Cas. 147; *Pullman Co. v. Gardner*, 16 A. & E. R. R. Cas. 324. The respondent's testimony establishes the fact that his own negligence directly contributed to his loss, and for this reason, too, the demurrer to the evidence should have been sustained. Whitaker's Smith on Negl. 324–28, notes. The instructions as to the appellant's liability in case of theft by the porter were erroneous; and it was error to refuse the instruction asked by the appellant on this point. See authorities cited above; also, *Blum v. Pullman Co.*, 3 Cent. Law Jour. 591; *Pullman Co v. Smith*, 73 Ill. 360; *Diehl v. Woodruff Car Co.*, 84 Ind. 474; *Welch v. Pullman Car Co.*, 16 Abb. Pr. [N. S.] 262; *Dargan v. Pullman Car Co.*, 26 A. & E. R. R. Cas. 149; *Lewis v. Sleeping-Car Co.*, 28 A. & E. R. R. Cas. 148; *Batterson v. Vogel*, 10 Mo. App. 235.

DYER, LEE & ELLIS, for the respondent: An erroneous instruction on the measure of damages, which did the appellant no harm, is not reversible error. *Nance v. Metcalf*, 10 Mo. App. 183, 191; *Gaty v. Sack*, 19 Mo. App. 470, 477–8. "The fact that the passenger retains

the custody of his baggage relieves the carrier of his extraordinary liability as insurer only ; for all losses in consequence of the negligence of, the carrier or his servants he still remains liable." Thompson on Carriers, 518. And the company is liable for the negligence of its servants. *Railroad v. Katzenberger*, 1 S. W. Rep. 4.

THOMPSON, J., delivered the opinion of the court.

This action is brought to recover the sum of $464, which the plaintiff alleges was stolen from him, "by the fraud or negligence of the defendant," while the plaintiff was a passenger on one of the defendant's cars. It appeared, from the evidence, that the plaintiff, going to join his family at a watering-place near Boston, and intending to return with them, purchased a railway passage ticket from St. Louis to Boston over the line of associated railways known as the Bee Line, and also bought of the defendant a ticket which entitled him to a berth, toilet accommodations, etc., in one of its sleeping cars running between a junction near St. Louis and Boston, over the said Bee Line. Besides about fifteen dollars, in his vest-pocket, the plaintiff took with him $464 in currency, which he carried in a small purse. According to his evidence, when he retired for the night in the berth which had been made up for him in the sleeping car, he deposited this purse, with its contents, in the side-pocket of his vest, and placed it under his pillow. On getting up in the morning, he felt for it, and found it safe where he had placed it. He then put on his pants and shoes, and, leaving his vest under his pillow, and this purse of money in the vest-pocket, where it had been during the night, he went to the ladies' toilet-room, at the forward end of the car, to wash himself and prepare for the putting on the rest of his clothes. When he left his berth for the ladies' toilet-room, the porter of the car was sitting on the seat next to the foot of his berth, with his back toward his berth. He did not notify the porter that he had left any valuables under his pil-

low, nor request him to watch his berth during his absence. He remained in the ladies' toilet-room about five minutes, and, on returning, discovered that his pocket-book was missing from his vest-pocket. He began a search for it, and, while so searching, the porter came up and said to him, "You have lost something, haven't you?" The plaintiff replied that he had lost his purse. The porter responded, "Here it is," handing it to him. It was in a collapsed condition, all the money abstracted from it. Search was made for the conductor of the sleeping car, and he was found, according to the plaintiff's testimony, in an ordinary passenger coach, but, according to his own testimony, in the other sleeping car which was upon the train. He telegraphed to the defendant's superintendent at St. Louis, stating the fact of the robbery and asking for instructions. Such instructions were given and proceedings had thereafter that, about seven hours after the robbery had taken place, an officer came on board the car and searched the porter, but without finding anything. On the arrival of the car at Boston, a search was made of the car. The porter soon after quit the defendant's service, but, as the testimony shows, without contradiction, in pursuance of a notice that he had previously given them, for the purpose of engaging in another employment. The uncontradicted evidence shows that the porter was and is a man of good reputation for honesty, and that, at the time of the trial, he was engaged in a business which involved trust and responsibility. The state of facts presented by the plaintiff's testimony, as to the circumstances surrounding the theft, was considerably modified by testimony presented by the defendant; but, as the jury have found for the plaintiff, the propriety of the instructions on which the case was submitted to them must be considered in relation to their application to the state of facts made by the plaintiff's evidence.

The court submitted the case to the jury upon the following instructions:

"1. The defendant was not an insurer of the safety

of the plaintiff's money while he was upon the said sleeping car; nor is the mere fact that the plaintiff lost his money thereon, or was robbed of his money thereon, of itself sufficient to create any liability of the defendant herein, unless you should find, from the evidence, that the plaintiff's money was stolen by the defendant's porter; and, if you should find that fact, then it would be necessary to a verdict in the plaintiff's favor, that you should, also find from the evidence, the other facts described in instruction numbered two."

"2. If you find, from the evidence, that, on the second day of October, 1883, while the plaintiff was a passenger on the sleeping car of the defendant, a sum of money was stolen from him by the defendant's porter, Sylvester, then you should find for the plaintiff."

" 3. If you do not find the facts to be as stated in instruction numbered two, but find, from the evidence, that, on October 2, 1883, while the plaintiff was a passenger on the defendant's sleeping car, his money was otherwise taken or stolen by reason of the omission of ordinary care on the part of the defendant and its employes in charge of the said car, to guard the plaintiff against such theft, or taking thereof; and further find, from the evidence, that the plaintiff was exercising ordinary care on his part, to avoid danger of theft, at and just before the time of such alleged theft, then your verdict should be for the plaintiff."

"4. If you find from the evidence that the defendant's porter did not take the plaintiff's money, then you should find for the defendant, if you find, from the evidence, that the plaintiff, by the exercise of ordinary care on his part, could have avoided said loss of his money, as alleged, or find, from the evidence, that the defendant and its employes exercised ordinary care in the premises to guard the plaintiff from theft of his money while a passenger on said sleeping car."

"5. What constitutes 'ordinary care,' as mentioned in these instructions, depends on the facts of each particular case. It is such care as a person of ordinary

prudence would exercise (according to the usual and general experience of mankind) in the same situation and circumstances as those of the person or persons in this case, with reference to whom the term, 'ordinary care,' is used in these instructions."

"6.   Unless you find the facts to be as mentioned in instruction numbered two, or instruction numbered three, then your verdict should be for the defendant."

"7.   If you find for the plaintiff under instruction numbered two, you will assess his damages at the sum you find, from the evidence, he so lost; but if you find for the plaintiff under instruction numbered three, then the plaintiff's recovery should be limited to such amount of the money you find, from the evidence, to have then been in his possession, as you find, from the evidence, to have been a reasonable sum necessary for the traveling expenses of the plaintiff and family on the journey he then had in contemplation, and had started upon."

Thereupon, the case was submitted to the jury, who retired for consultation.   On the next day, the jury, not having agreed upon a verdict, were recalled into court, and, after a short statement from the jury, the court stated to counsel that certain further instructions would be given, and gave the counsel the opportunity of submitting any additional requests for instructions.   One additional instruction was requested by the defendant and refused, but this need not be considered.   The court thereupon gave, of its own motion, the following instructions, among others :

"1.   The defendant was not an insurer of the safety of the plaintiff's money while he was upon the said sleeping car ; nor is the mere fact that the plaintiff lost his money therein, or was robbed of his money thereon, of itself sufficient to create any liability on the defendant's part in this cause, unless you should find, from the evidence, that the money of the plaintiff was stolen by the defendant's porter, Sylvester, while the plaintiff was a passenger on the said sleeping car, on October 2, 1883."

"2½. If you should find, from the evidence, that the money was stolen from the plaintiff (while he was a passenger on said sleeping car of the defendant, on the second day of October, 1883) by the defendant's·porter, Sylvester, then it is wholly immaterial whether or not you believe, from the evidence, that the plaintiff exercised ordinary care to avoid the risk of theft. If you should find, from the evidence, that the said money was stolen by the porter, as aforesaid, the defendant would be liable for the amount so stolen, no matter how careless the plaintiff may have been in the care of his money."

Thereafter the jury returned a verdict for the plaintiff in the sum of $232, which, it is perceived, is just one-half the amount which the plaintiff claims to have lost.

I. As to the two instructions which the court gave of its own motion, we do not understand that these instructions state the law correctly. The settled law is, that a sleeping-car company is not an insurer of the baggage of the passenger, but that its liability, at most, is that of a bailee for hire. In the case of a loss of the passenger's baggage or belongings it is, therefore, liable, if at all, only on the ground of negligence; and, in order to be so liable, it must have been negligent in the performance of some duty which it assumed to perform for the passenger. That duty, so far as adjudged cases seem to have gone, is, that it will maintain in the car a reasonable watch during the night while the passenger is asleep. We now go further, and, speaking with reference to the facts of this ·case, we hold that the duty of keeping watch does not terminate with the period during which the passenger is actually asleep, but that it extends to keeping a reasonable watch over such of his necessary baggage and belongings as he can not conveniently take with him nor watch himself while he is absent from his berth in the washing-room, preparing his toilet after arising in the morning. This duty of watchfulness extends so far as to make the sleeping-car

company liable for a negligent failure to perform it, to the extent of any baggage or personal belongings which the passenger may thereby lose, which are reasonably necessary to be taken by him on his journey, regard being had to his station in life, and to the length, purposes, and probable duration of the journey. *Railroad v. Fraloff*, 10 Otto, 24; *Spooner v. Railroad*, 23 Mo. App. 403. "Nor does the implied undertaking include a large sum of money; it can not cover more than a reasonable amount, necessary to pay traveling expenses." *Whitmore v. Steamboat*, 20 Mo. 513, 518; *Orange County Bank v. Brown*, 9 Wend. 116; *Hellman v. Holladay*, Woolw. 365. What is a reasonable amount of baggage, or of money for traveling expenses, for a traveler thus to take with him, is a question of fact for a jury, to be decided upon consideration of the evidence touching the length, the duration, and the purposes of the journey, and the station in life of the traveler. *Railroad v. Fraloff*, 10 Otto, 24; *Merrill v. Grinnell*, 30 N. Y. 594; *Parmalee v. Fisher*, 22 Ill. 212; *Dibble v. Brown*, 12 Ga. 217; *Brock v. Gale*, 14 Fla. 523; *Johnson v. Stone*, 11 Humph. 419; *Jordan v. Fall River Co.*, 5 Cush. 69; *Weed v. Railroad*, 19 Wend. 534. Beyond the amount of baggage or money which it is thus reasonably necessary for the traveler to take with him, the sleeping-car company assumes no duty of watchfulness, and is under no liability, in case of loss or theft. It is not even a gratuitous bailee in respect of such excess of money or baggage, nor is its position even that of a warehouseman who furnishes house-room merely, without assuming any duty of watchfulness. On the contrary, as a carrier is entitled to extra compensation for carrying treasure, the taking of such an amount of money upon the carrier's vehicle, concealed in the passenger's baggage, has been regarded as a fraud upon the rights of the carrier. *Orange County Bank v. Brown*, 9 Wend. 116; *Hellman v. Holladay*, Woolw. 365.

A master is not liable for the torts or crimes which

his servant commits, not within the scope of his employment, but to effect some purpose of his own, unless such tort or crime is of itself a violation of some duty which the master has assumed toward the person injured, and which he has undertaken to perform through the servant. *Croft v. Alison*, 4 Barn. & Ald. 590; *Coal Company v. Helman*, 86 Pa. St. 418; *Mitchell v. Crassweller*, 13 C. B. 236; *Jackson v. Railroad*, 87 Mo. 422, 430. A warehouseman who rents houseroom only, without assuming the duty of watching the goods, is accordingly not liable for them, although they may have been stolen by his own servant, if without the master's fault. *Finucane v. Small*, 1 Esp. 315; *Schmidt v. Blood*, 9 Wend. 268; see, also, Story Bailm., sect. 407, and cases cited; *Whitemore v. Haroldson*, 2 Lea [Tenn.] 312. This defendant was, therefore, not liable, in case its porter stole the plaintiff's money, for any amount beyond what was reasonably necessary for the plaintiff's traveling expenses, and the instruction numbered 2½, which told the jury that if they should so find, the defendant was liable *for the amount so stolen*, was to that extent erroneous. It had not agreed to become a carrier of treasure; nor had it received compensation for such a responsibility; nor had it even received notice from the passenger that such a duty was expected of it. *Chouteau v. Steamboat*, 16 Mo. 216; *Whitmore v. Steamboat*, 20 Mo. 513.

II. But we are of opinion that, within the limits of responsibility above stated, a sleeping-car company is liable for the thefts of its servants, irrespective of the contributory negligence of the plaintiff; that is to say, it is liable for the thefts of its servants to the extent of the necessary baggage or money of the traveler, regard being had to the character, duration, and purposes of the journey, whether the traveler has been negligent in exposing such baggage or money so as to tempt the cupidity of its servants or not. In such a case contributory negligence of the passenger would not be regarded as the proximate or juridical cause of the injury.

The duty of the defendant, through its servants, would be to protect the passenger's property, although discovered in an exposed situation where his carelessness may have left it.    This must be so ruled upon the analogy of a numerous class of cases where the plaintiff negligently exposes his person or property to injury, and the defendant, *afterwards*, seeing that it is thus exposed, nevertheless fails to exercise ordinary care to prevent injuring it in its exposed condition, and does injure it; in all which cases it is held that the plaintiff's negligence is but a remote cause of the injury, that the defendant's negligence is the proximate and efficient cause, and that the defendant must pay damages.    *Tuff v. Warman*, 2 C. B. [N. S.] 740; s. c., affirmed, 5 C. B. [N. S.] 573; *Radley v. Railroad*, 1 App. Cas. 754; *Davies v. Mann*, 10 Mees. & W. 546; *Huelsenkamp v. Railroad*, 37 Mo. 537, 550; *Bell v. Railroad*, 86 Mo. 599; *Rine v. Railroad*, 88 Mo. 392, 399.

III.    But it is argued in behalf of the plaintiff that, although this court may take the view that the instruction numbered $2\frac{1}{2}$ is erroneous, yet the error is not a ground of reversal; since, under this instruction, the jury must have found for the plaintiff for the full amount lost, namely, for $464, whereas they have found but for $232.    It is true that the mere fact that the jury returned a verdict for just one-half the amount claimed does not carry an unavoidable inference of misconduct in arriving at the verdict, where, as in this case, the amount is a matter of judgment or opinion on the part of the jury, which, as we have seen, is the case in respect of what amount of money a passenger may reasonably take with him for the purposes of a journey.    We may, therefore, be warranted in concluding that the jury rested their finding upon the ground of negligence, which was submitted to them in the other instructions. If they rested their finding upon this ground, then it is conceded that the contributory negligence of the plaintiff was a material inquiry; for we hold that the sleeping-car company is not liable, while the passenger is

awake, for a theft of the baggage or money of the passenger not committed by defendant's own servants, but committed by some one else while it was failing to keep a reasonably diligent watch, where the passenger himself had been negligent in exposing such baggage or money to the theft. The custody of the passenger's hand-baggage and money is, saying the most that can be said in his favor, a mixed custody—partly his custody, and partly that of the sleeping-car company. But it is not even a mixed custody, in respect of money or other small valuables which he can conveniently keep upon his person, or under his eye, while he is awake. Such a custody is the exclusive custody of the passenger, and not, in any sense, the custody of the carrier. Now, if a passengers put such articles in a situation where anybody can steal them, and goes away and leaves them there, and especially if he does this without notifying any servant of the sleeping-car company that he has so left them, it must be said, as a matter of law, that he has been guilty of contributory negligence. In the case at bar, according to the plaintiff's own evidence, when he went to the lavatory, after getting up in the morning, he left under his pillow, in various pockets of his vest, his watch, fifteen dollars in loose bills, and $464 in a purse. He had already put on his pants, and these articles could have been easily and conveniently transferred from their exposed situation to the pockets of his pants—a precaution which, it is believed, prudent travelers in a like situation generally take. Here was a *specific* negligence on his part, touching the custody of his own valuables, of a gross character. If the doctrine of comparative negligence, which obtains in some jurisdictions, could be invoked here, it might be said that his negligence, as compared with the negligence of the defendant in failing to keep a *general* watch, was gross, while that of the defendant was slight. But, under our law it is sufficient that his negligence concurred with that of the defendant, without reference to its degree, as compared with that

of the defendant, in order to prevent his recovery ; and we are bound to hold, upon his own testimony, as a matter of law, that his negligencê did so concur. There was, therefore, no case to go to the jury upon the ground of negligence ; the court erred in submitting the case to the jury upon that ground, and, as we are bound to hold that the jury rested their verdict upon that ground, and not on the ground of a theft by the defendant's porter, it must be set aside.

The judgment will be reversed and the cause remanded, with the concurrence of all the judges.