W. F. MORROW, Respondent, v. PULLMAN PAL-
ACE CAR COMPANY, Appellant.

Kansas City Court of Appeals, February 16, 1903.

1. Trial Practice: DEMURRER TO EVIDENCE: NEUTRALIZING EVIDENCE. On a demurrer to the evidence the court should make every inference that a jury might reasonably make in plaintiff's favor, and if then it is insufficient to support a verdict the demurrer should be sustained; and where a part of plaintiff's evidence tends to establish a prima facie case, yet if with the whole evidence it is neutralized the demurrer is likewise properly sustained; but where a reasonable person might entertain a different opinion, the whole evidence should go to the jury.

2. ———: ———: ———: THEFT FROM SLEEPING CAR PAS-SENGER: NEGLIGENCE. The testimony relating to a theft from a passenger on a sleeping car is reviewed in the light of the above rules, and the case is held properly sent to the trier of facts on the two theories that the servant of the defendant was the thief and the defendant was negligent.

3. Master and Servant: VICE-PRINCIPAL: SLEEPING CAR PORTER: AGENCY. Where there is no conductor in a sleeping car and the porter receives the dues and assigns the passengers to their berths, he is the vice-principal, and in the absence of fraud his acts bind the company.

4. Negligence: SLEEPING CAR COMPANY: INSURER: BAILEE. A sleeping car company is not an insurer of the personal belong-

ings of its passengers, but is merely a bailee for hire and should maintain a reasonable watch during the night while passengers sleep.

5. **Appellate Practice: TRIAL BEFORE COURT: NO INSTRUCTIONS: CONFLICT OF EVIDENCE.** Where there are no exceptions to the evidence and no instructions in a trial before the court, the appellate court must affirm the judgment if it can be upheld on any theory of law applicable to the facts, and the conflict in the evidence is for the trial court.

ON MOTION TO TRANSFER.

6. On a motion to transfer this cause to the Supreme Court, the cases of Root v. The Sleeping Car Company, 28 Mo. App. 199, and Chamberlain v. Pullman Palace Car Co., 55 Mo. App. 474, are considered and held not to be in conflict with the opinion handed down in this case.

Appeal from Jackson Circuit Court.—*Hon. James Gibson*, Judge.

AFFIRMED.

*Lathrop, Morrow, Fox & Moore* for appellant.

(1)   Plaintiff's action was grounded upon defendant's negligence. He alleges a want of ordinary care on the part of defendant to prevent the loss of his wearing apparel and personal effects by theft or otherwise. Beyond the mere fact of loss, his evidence showed no want of ordinary care on the part of defendant. From proof of loss alone, no presumption of negligence arises. 22 Am. and Eng. Ency. of Law, p. 800, under heading "Sleeping Cars;" Whicher v. Railroad, 176 Mass. 275; Tracy v. Pullman Co., 67 How. Pr. 154; Carpenter v. Railroad, 124 N. Y. 53; Bevis v. Railroad, 56 Am. Rep. 850.   (2)   Defendant's evidence showed, without contradiction, that usual and ordinary care was exercised by its porters in keeping the doors of the car locked, and in watching over the passengers and their effects during the night. No passengers occupying the berths in the body of the car, provided by defendant for their

accommodation, lost anything.  Root v. Sleeping Car Co., 28 Mo. App. 199; Efron v. Car Co., 59 Mo. App. 649; Belden v. Car Co., 43 S. W. 22; Whicher v. Car Co., 176 Mass. 275.   (3)   The entire evidence in the case showed beyond question that plaintiff's loss resulted from theft through the open window of the smoking room in which he was sleeping, while the train stopped at Des Moines, Iowa.   For loss thus occasioned the defendant can not be held liable.   Dargan v. Pullman Car Co., 26 Am. and Eng. R. R. Cas. 149; Car Co. v. Hall, 106 Ga. 765; Railroad v. Handy, 63 Miss. 609; Welsh v. Pullman Co., 16 Abb. Pr. (N. S.) 352; Car Co. v. Smith, 73 Ill. 360; Car Co. v. Gaylord, 6 Ky. Law. Rep. 279.   (4)   The defendant owed the plaintiff no duty to guard his property or effects during the night. He was at most a mere licensee in the smoking room. 1 Elliott on Railroads, sec. 215, p. 304; Pollock on Torts, sec. 426; Ray, Negligence of Imposed Duties, Carriers of Passengers, page 145; Aufenburg v. Railroad, 132 Mo. 566.   (5)   Plaintiff's loss was the direct result of his own contributory negligence.   He went to bed in the smoking room, an unusual place for passengers to sleep, upon his own request.   It was against the defendant's rules for it to be so occupied and the porter's assent thereto does not relieve plaintiff from his own contributory negligence in sleeping in a place not provided by defendant for that purpose.   Chamberlain v. Car Co., 55 Mo. App. 474; Root v. Car Co., 20 Mo. App. 209; Walker v. Green, 56 Pac. 477; Railroad v. Clemens, 55 Texas 88; Railroad v. Leftwich, 117 Fed. 127.

*Jas. A. Reed* and *Fyke Bros., Snider & Richardson* for respondent.

(1)   There was no error committed by the trial court before whom this cause was tried without the in-

tervention of a jury. All the reliable testimony in the case strongly tends to show that the property was stolen by the porter, who was acting conductor of defendant's sleeping car. Therefore, defendant is liable for the loss of a reasonable amount of property belonging to plaintiff, considering the character of the journey and the circumstances of the plaintiff, although contributory negligence might have existed, which plaintiff denies. Hampton v. Car Co., 42 Mo. App. 134; Root v. Car Co., 28 Mo. App. 199; Florida v. Car Co., 37 Mo. App. 599; Scaling v. Car Co., 24 Mo. App. 29; Root v. Car Co., 28 Mo. App. 29; Hampton v. Car Co., 42 Mo. App. 134; Efron v. Car Co., 59 Mo. App. 641.

SMITH, P. J.—On the evening of July 28, 1901, the plaintiff with his wife, daughter and son, and a Miss Chandler, who accompanied them, took passage in one of defendant's sleeping cars from Kansas City, in this State, to Oelwein, in the State of Iowa. The plaintiff engaged and paid for a section containing an upper and lower berth, his wife and daughter occupying the lower and his son the upper. He and the members of his family accompanying him had a number of dress-suit cases and valises. After his wife and the other two ladies had retired for the night he withdrew from his inside pocket a purse containing his money and from this he took a small amount of change, after which he opened his suit case—a new one— and dropped the purse therein, closing and locking the case in full view of the negro porter who was acting in the double capacity of conductor and porter, and who had sole charge of the car. The plaintiff after thus putting his money in his dress suit case set the latter down by the side of the berth occupied by his wife and daughter. Later on, he and his son went to the smoking compartment at the rear end of the car where it was cooler than in the main body of it. While they were sitting in this compartment the plaintiff, in the hearing of the porter, remarked to

his son: "Why would not this be a good place to sleep?" and thereupon the porter remarked: "Why, you can if you like; it is very often they do sleep here, and you can if you want to." The plaintiff then asked what would be the expense and the porter replied that "they gave him whatever they please." The porter thereupon made up the plaintiff's bed in the smoking room just as he did those for the other passengers in the main part of the car. The couch on which the plaintiff's bed was made extended across the room. There was an outside window in the compartment about four feet from the head of plaintiff's bed which was left open from twelve to fifteen inches. The plaintiff was not furnished a key to lock the compartment, but before retiring he closed the door leading into it. He hung his trousers up on a hook above the head of his bed, and then hung his coat and hat over them. His shoes he placed by the side of his bed. In his trouser's pockets were his watch, chain, spectacles, Knights Templar charm, pocket knife and something like a dollar in change. The next morning when he awoke he discovered that his trousers and the contents of his pockets, with his shoes, were gone. He called the porter and inquired of him what had become of his missing things and he replied that he did not know. The car was then near Oelwein and by the time it reached there the plaintiff had secured another pair of trousers, but when about to leave the car he was unable to find his dress suit case. He told his son to see the porter and get it if he could. Whereupon, the plaintiff, his wife, daughter, son and Miss Chandler searched the car for the missing suit case but none of them could find it. At this time the berths had been put up so that the seats could be used. The plaintiff's son searched under the seats and on the sides of them for the missing case, but the search was in vain. After this the porter was asked if he remembered it and he said: "Let me see—I don't know." Then he stated that he had seen a lady going towards

the station with a grip or suit case that looked like the one in question. The plaintiff's son and the porter then went to the station but the porter was unable to find the lady with the case there. The former then remarked to the latter: "If you don't get that valise there is going to be trouble. All of our money is in there." The plaintiff's son then made further search for the suit case in the car and failing to find it took up his own valises and went into the car of a connecting train where his sister, who had preceded him there, stated to him that the porter had brought to them the suit case. It was afterwards ascertained to be intact.

The plaintiff's keys were subsequently sent to him by one who had found them by the side of the railway track at the city of Des Moines, Iowa, where the train pulling the car in which plaintiff had taken passage at Kansas City had stopped on its way during the night preceding the morning of its arrival at Oelwein. The other articles, however, the value of which was considerable, were never recovered.

A jury was dispensed with and the case was submitted to the court. At the close of plaintiff's evidence, and at the conclusion of all the evidence, the defendant demurred on which the ruling was adverse to defendant, followed with judgment for plaintiff. Defendant thereupon appealed. The propriety of the action of the court in denying defendant's demurrers is the only question raised in the case.

The rule has been long and well settled in this State to the effect that in passing upon a demurrer to the evidence the court is required to make every inference of fact in favor of the party offering the evidence which a jury might with any degree of propriety have inferred in his favor, and when received in this light it is insufficient to support the verdict in his favor the demurrer should be sustained. Wilson v. Board, 63 Mo. 137. But the court is not at liberty in such case to make inferences of fact in favor of defendant to counter-

act or overthrow either the presumption of law or inferences of fact in favor of plaintiff. Buesching v. Gas Co., 73 Mo. 219; Donohue v. Railroad, 91 Mo. 357. And where there is any evidence to establish a complaint from which the jury may reasonably infer the essential fact, the court should not take the case from the jury. Thomas v. Express Co., 30 Mo. App. 86; Twohey v. Fruin, 96 Mo. 104. And where the evidence for plaintiff contains that which, if alone, would tend to prove facts sufficient to establish his prima facie case, yet when considered with the whole evidence it is so completely neutralized, destroyed or rendered inoperative that reasonable persons could come to but one conclusion as to its effect, a demurrer in such case could be properly interposed. But where that part of the evidence which is relied on as destroying or nullifying that of plaintiff is not conclusive in its character, but is such that reasonable persons might entertain different opinions, then the whole evidence should go to the jury for determination. Torpey v. Railroad, 64 Mo. App. 1. c. 387.

The evidence of the plaintiff tended to establish a state of facts from which it may be reasonably inferred that the defendant's negro porter, who was also acting in the capacity of conductor, purloined the plaintiff's property. If such testimony is given credence, it is inconceivable how any other inference could be fairly drawn from it. The evidence of defendant tending to prove that plaintiff's keys were found shortly after their loss near the railway track at Des Moines, in no way neutralizes or destroys the evidence adduced by plaintiff. It would have been no difficult matter for any one having plaintiff's keys on the inside of the car to have thrown them out of an open window to the side of the track where they were found. It seems to us that it was quite as probable that they were thrown out from the inside of the car as that they were dropped by one having them in his possession on the outside of it. Nor can it be claimed that the testimony of defendant's con-

ductor and porter with that of the train conductor in respect to the footprints on the top of the oil box of the car, which was situate directly under the open window of the smoking compartment and just above the car wheel, has the effect of neutralizing and destroying the evidence adduced by plaintiff.

It is a part of the history of the country of which we may take notice that the summer of 1901 was perhaps the hottest and dryest season that has occurred since its first settlement.   It may be well inferred from the evidence that the train which pulled the sleeper on which plaintiff took passage on its way from Kansas City to Oelwein was enveloped in a constant cloud of stifling dust and that it encountered no mud.   That dust settled on every exposed part of the sleeper there is little room to doubt; but that plastic clay was found on any part of it during that trip may be well doubted.   If it rained on that or the preceding day the fact could have been easily shown by the reports made by the United States weather observer at Des Moines.   If it be true, as defendant insists, the smoking compartment of its car was entered from the outside through the open window at Des Moines, and the person entering did so by placing his feet on the top of the oil box, and from there climbing through the window, and in that way left his footprints in the dust that had settled on the top of such oil box, still, it is wholly improbable that after the train had run from Des Moines to Oelwein, a distance of more than two hundred miles, and occupying about six hours in doing so, that such footprints on the top of the oil box or the abrasion of the surface of the coat of dust on the side of the car under the open window should still have been visible when the car reached the latter place.   The evidence so offered by the defendant as to the footprints and marks in the dust on the side of the car, to say the least of it, is by no means of conclusive character.   Neither the evidence of defendant in respect to the finding of plaintiff's keys nor that in respect to the foot-

prints raises an inference sufficiently strong to conclusively rebut and overcome the incriminatory inference deduced from plaintiff's evidence.

Applying to the evidence the rules which we have hereinbefore stated, and we have no doubt that the case was properly submitted to the jury, or, which is the same thing, to the court sitting as a jury.

And as there was evidence justifying the submission on the theory that the defendant's porter purloined the property lost by plaintiff, in considering the case on that theory, the defense of contributory negligence is to be excluded. The rule is that a sleeping car company is liable for the thefts of its servants to the extent of the necessary baggage or money of the traveler, regard being had to the character, duration and purposes of the journey, whether the traveler has been negligent or not in exposing such baggage or money so as to tempt the cupidity of servants. In such a case contributory negligence of the passenger would not be regarded as the proximate or judicial cause of the injury. Root v. Sleeping Car Co., 28 Mo. App. 1. c. 207-8, and authorities there cited.

There was evidence adduced by the plaintiff justifying the consideration of the case on the ground of negligence. The negro who was in charge of defendant's car was, as has been stated, acting in the capacity of both conductor and porter thereof. He was the sole representative of the defendant and must be regarded, as to the conduct and management of that car, as its vice-principal. He collected fares, assigned passengers to their berths, changed them from one berth to another when desired by them, and was defendant's factotum on that car. The case is not different to that where it has been held that a railway conductor who was exercising control over a train and was the only one present in absolute control of its movement, with the apparent right to say who if any one should travel on it, permitted a person to take passage on it without

notice of any want of authority to grant such permission, in the absence of collusion between him and the conductor to defraud the company of its fare, whether he paid the fare or not, became a passenger, and as such was entitled to have the train managed with the care that was due from a common carrier to its passengers. Wagner v. Railroad, 97 Mo. and authorities there cited on p. 522; McGhee v. Railroad, 92 Mo. 208. The defendant was under no obligation to permit the plaintiff to occupy a bed in the smoking department of the car, but if it did so it is quite difficult on principle to see why the former did not assume to the latter the same duties as if he had occupied a berth inside of the main part of the car; or how the plaintiff assumed any risk by his occupancy of the smoking compartment different from that of the other passengers occupying regular berths in the main car. When plaintiff hung up his wearing apparel in which were his watch, spectacles, and the other articles, it was just the same as if he had hung them up in an inside berth so far as the duties of the defendant to him went. These articles were in the mixed custody of the plaintiff and defendant.

A sleeping car company is not an insurer of the personal belongings of the passenger. Its liability is that of a bailee for hire and in cases of loss, if liable at all, it is on the ground of negligence. In order to be so liable it must have neglected some duty which it assumed to perform for the passenger. One of its duties, according to the adjudged cases, is to maintain in the car a reasonable watch during the night while the passenger is asleep. Root v. Sleeping Car Co., ante; Florida v. Sleeping Car Co., 37 Mo. App. 598. The defendant's combined conductor and porter seems not to have given the plaintiff or his personal belongings the slightest attention during the night. He knew that one of the windows of the compartment was open and unscreened, but he did not offer to place a screen in it. The plaintiff's clothes were hung on a hook over his bed four feet from

the window and if there was any danger to be incurred by leaving the window open the defendant should either have screened it or offered to do so; but in this, according to plaintiff's evidence, it failed. As the window was left open by defendant, a greater degree of care and vigilance was required of it. The plaintiff can not be held to have been guilty of contributory negligence unless the window was left open and unscreened at his request; nor can he be barred of his right to recover even if he did request the window to be left open and unscreened—a fact which his evidence does not tend to prove—unless his property was stolen by a stranger through the window from the outside. The court could not, under the evidence of plaintiff, declare as a matter of law that he was guilty of contributory negligence and therefore not entitled to recover.

The evidence, we think, in the concrete case was of such a character as to require a submission on the issue of the negligence of the defendant and the contributory negligence of the plaintiff. The court might have found for plaintiff on either the theory that the property was purloined by the defendant's porter, or on the ground of defendant's negligence.

The practice is, in cases like this where no instructions were asked or refused and no exceptions preserved to the admission or rejection of evidence, that, if the judgment can be upheld by us on any theory of law applicable to the facts which the evidence tends to prove, it must be affirmed. Wagner v. Furniture Co., 63 Mo. App. l. c. 208. While the evidence adduced by defendant in many material respects is in direct conflict with that of plaintiff, yet such conflict was a matter for the consideration and determination of the court sitting in the capacity of a jury, and its general finding on the whole case for the plaintiff must conclude us.

We discover nothing in the defendant's contention that the court, after it was developed at the trial that the plaintiff's keys had been found and returned to him,

should have opened the case and allowed it to take further testimony. There was nothing shown to justify the conclusion that if the case had been reopened that any testimony would have been obtained materially different from that already given. The judgment will be affirmed. All concur.

### OPINION ON MOTION TO TRANSFER.

SMITH, P. J.—By reference to Root v. Sleeping Car Co., 28 Mo. App. 199, and Chamberlain v. Pullman Palace Car Co., 55 Mo. App. 474, decided by the St. Louis Court of Appeals, it will be seen that the defendant's contention that the decision rendered by us is contrary to that in those cases, can not be upheld. In the first of these cases (28 Mo. App. 199) it was declared:

(1) "The settled law is that a sleeping car company is not an insurer of the baggage of the passenger but that its liability, at most, is that of a bailee for hire. In the case of the loss of the passenger's baggage or belongings it is, therefore, liable, if at all, only on the ground of negligence; and, in order to be so liable, it must have been negligent in the performance of some duty. That duty, so far as adjudged cases seem to have gone, is, that it will maintain in the car a reasonable watch during the night while the passenger is asleep. We now go further, and speaking with reference to the facts of this case, we hold that the duty of keeping watch does not terminate with the period during which the passenger is actually asleep, but that it extends to keeping a reasonable watch over such of his necessary baggage and belongings as he can not conveniently take with him nor watch himself while he is absent from his berth in the washingroom, preparing his toilet after arising in the morning. This duty of watchfulness extends so far as to make the sleeping car company liable for the negligent failure to perform it, to the extent of any baggage or personal belongings which the passenger may thereby

lose, which are reasonably necessary to be taken by him on his journey, regard being had to his station in life, and to the length, purpose, and probable duration of the journey.'' . . .

(2) ''We hold that a sleeping car company is not liable, while the passenger is awake, for a theft of the baggage or money of the passenger not committed by defendant's own servants, but committed by some one else while it was failing to keep a reasonably diligent watch, where the passenger himself had been negligent in exposing such baggage or money to the theft. The custody of the passenger's hand-baggage and money is, saying the most that can be said in his favor, a mixed custody—partly his custody, and partly that of the sleeping car company. But it is not even a mixed custody, in respect to money or other small valuables which he can conveniently keep upon his person, or under his eye, *while he is awake.* Such a custody is the exclusive custody of the passenger, and not, in any sense, the custody of the carrier. Now, if a passenger put such articles in a situation where anybody can steal them, and goes away and leaves them there, and especially if he does this without notifying any servant of the sleeping car company that he has so left them, it must be said, as a matter of law, that he has been guilty of contributory negligence.''

In the second of those cases (55 Mo. App. 474) the language contained in the second of the two above paragraphs was quoted with approval. It is thus seen that in the two cases cited, the St. Louis Court of Appeals has decided no more than that the custody of such belongings of the passenger as consist of his personal valuables, and which he can conveniently keep upon his person, or under his eye, during the day time, or while he is awake, is his exclusive custody, and not a mixed custody; i. e., partly his and partly that of the sleeping car company.

In this case, as shown by the opinion, it is ruled that the custody of such belongings during the nighttime, while the passenger sleeps, is a mixed custody, so that it is obvious that there is no conflict between the said ruling of the St. Louis Court of Appeals and that made by us in the present case. That court has declared that the custody of the personal belongings of the passenger *during the daytime, or when he is awake,* is his exclusive custody. While we have declared that when the passenger has retired for the night to his berth or bed for sleep that the custody of his personal valuables, carried in the pockets of his wearing apparel and hung up above the head of his bed, are, during the time he sleeps, a mixed custody. It may be that the custody of personal valuables of a passenger during the night while he sleeps is exclusively his, and not a mixed custody as is ruled by us, but certainly there is nothing in the two cases aforesaid decided by the St. Louis Court of Appeals holding anything to the contrary. It will be seen that the facts in those two cases were where the loss took place in the daytime and not where, as here, it took place in the nighttime while the passenger slept.

It results that the ruling made by us, whether right or wrong, is not in conflict with that of our sister court, and for that reason the motion of defendant must be denied.