October Term, 1883, No. 156.          November 2, 1883.

## Pullman Car Company *v.* Gardner.

1. A sleeping-car company is bound to provide reasonable care and precaution against the valuables of a passenger being stolen from his bed, or from the clothes on his person, while he is asleep.

2. Whether it has exercised that degree of care under given circumstances is for the jury.

3. While evidence to the effect that another passenger was robbed on the same night and in the same sleeping-car as the plaintiff is not relevant to prove that the plaintiff was in fact robbed, it is admissible as bearing on the absence of proper care by the defendant company.

4. Declarations of the porter left in the care of the car by the company that, during the night in which the robbery occurred, he went to the toilet-stand, from which the berths were not visible, to black the boots of a passenger, are admissible.

5. A berth-check, given to the plaintiff when he entered the car in exchange for his ticket, and which contained the notice, "Wearing apparel or baggage placed in the car will be entirely at the owner's risk," was properly excluded.

Before Mercur, C. J.; Gordon, Paxson, Sterrett, Green, and Clark, JJ. Trunkey, J., absent.

Error to the Court of Common Pleas No. 1 of *Allegheny County.*

Case by William Gardner against The Pullman Palace Car Company, to recover damages for losses occasioned by the alleged negligence of the defendant and its employés, in not exercising proper care for the protection of plaintiff and his personal effects. Plea, not guilty.

The facts as they appeared at the trial before Stowe, J., were as follows: On April 8, 1881, the plaintiff purchased for two dollars a sleeping-car ticket, entitling him to a berth in the sleeping coach "Bordentown," running from Philadelphia to Pittsburgh. The berth designated by the ticket was the upper one in the second section from the rear door on the left of the car. The plaintiff retired immediately upon the train leaving Philadelphia, which was at 11.50, P. M. He took off his coat and vest, and put his watch, which was valued at $250, and his pocket-book, containing about $55, into the inside pocket of his vest. He then wrapped his vest up and placed it under the corner of the mattress farthest from the aisle outside. He was soon asleep, and did not wake until the train reached Huntingdon at seven o'clock in the morning. He was then aroused by the passenger conductor asking for his railroad ticket. He found the ticket outside the pocket-book. The money had been taken. The

[Pullman Car Company *v.* Gardner.]

watch was also gone. He called the conductor, and a dispatch was sent forward to Tyrone, where detectives met the train and searched part of the passengers, but the missing property could not be found. There were two Pullman cars on the train, one sleeper and a hotel car. Five men were in charge of these cars, the conductor, a porter for the sleeper, and a cook and two waiters for the hotel car. The conductor kept watch, in accordance with the company's regulations, sitting on a camp-stool at the end of the aisle next to the large state-room until three o'clock. He then went to sleep, leaving the car in the sole charge of the porter.

Two passengers had taken berths at Philadelphia for Altoona, and they left the train at Harrisburg. One of them had the lower berth in the section next to the plaintiff's.

The plaintiff testified, *inter alia*, under objection.

"I commenced talking to the porter, and General Ross was with me. I picked him out, and he recognized me, and then says he: 'This is a very careless way of taking care of people's property.' Says I: 'It is a very careless way of taking care of the cars.' The porter says: 'How can I take care of two cars together?' The porter said he could not take care of two cars, and says I: 'Where is the conductor?' He says: 'The conductor is here.' Says I: 'How is this? Is there no care to be taken of us while we are asleep?' With that another man sung out, says he: 'I am robbed.' . . . Yes, sir; he (the porter) said one of the men who got off at Harrisburg went back to get his boots blacked, and the other went in the car.

By counsel for plaintiff.

*Q.* Where did he say he blacked the boots?

*A.* Before he got to Harrisburg. The porter said they would not take them off because they were going in the country.

*Q.* Afterwards he came and had them blacked?

*A.* Yes, sir.

*Q.* Where was he—did he say?

*A.* In the front end of the car, where the toilet stands." (Fourth assignment of error.)

The boots were blacked at the wash-stand. There was a state-room between that and the car. The toilet-stand was at the extreme end of the car. The instructions of the company were that the porter, while blacking shoes, should sit in the aisle with the door open on a camp-stool.

[Pullman Car Company *v.* Gardner.]

Counsel for plaintiff offered in evidence, under objection, the deposition of Charles C. Darling, as follows:

"*Q.* Were you on the night spoken of robbed while asleep? If so, state what it was.

*A.* I was robbed of cash—bank notes.

*Q.* Were those bank notes taken from your pocket-book or your clothing, and how had you disposed of your money for the night?

*A.* They were taken from my pocket-book from my inside vest pocket. I had the vest rolled up, put under the mattress next the window at the head of the bed." *Et seq.* (Fifth assignment of error.)

Counsel for defendant offered in evidence an identified copy of the berth check given to the plaintiff when he entered the sleeping car by the conductor who took up the ticket.

The check contained, *inter alia,* the words: "Wearing apparel or baggage placed in the car will be entirely at the owner's risk."

Objected to because the contract was made before the check was given.

The offer was overruled. (Sixth assignment of error.)

The defendant presented, *inter alia,* certain points, which, with their answers, were as follows:

1. That under all the evidence the plaintiff is not entitled to recover.

*Answer.* Refused. (First assignment of error.)

3. That if the jury find, from the evidence, that the conductor was at his post and stood on watch in the coach where the theft occurred until three o'clock, that he then called the porter to take his place, and that the porter continued on watch in the car until morning, and that this was the usual mode of caring for the safety of the passengers when asleep, and guarding their personal effects against intruders, pickpockets, and thieves, it was the exercise of that ordinary care which the law requires, and the plaintiff is therefore not entitled to recover.

*Answer.* Affirmed, with this explanation: Merely suggesting that by the expression "the porter continued on watch in the car until morning" we mean, not simply that he assumed to watch, but that he did actually, and with reasonable and proper attention, continuously watch till morning. (Second assignment of error.)

The Court charged the jury, *inter alia:*

"We used to ride around in stage coaches; if robbed while in them the company, being under no obligation to carry a guard, was not responsible for the robbery, al-

[Pullman Car Company v. Gardner.]

though you might go to sleep, and they knew perfectly well you would go to sleep, or ought to suppose you would, for a man could not ride half a dozen days or nights without going to sleep; but in the case of a sleeping-car company, the great convenience and inducement held out to passengers is that they will give them a comfortable night's rest. They notify them they will make them pay for it, and say to them, you may go to sleep. The principal part of the arrangement is the advantage the passenger will have over the ordinary car, that he can lie down and go to sleep. When you have gone to sleep, of course, you can't take care of yourself, everybody knows that, and for that very reason the fact that the company notifies you to lie down and shut your eyes and go to sleep and thus become helpless, it is their duty to take care of you while you do sleep—not that they are insurers, not that they say you shall not be robbed or cannot be robbed, but they will use reasonable and ordinary care to prevent people intruding upon you and picking your pockets or carrying off your clothes while you are asleep. That is the principle that should underlie all of these cases, and it strikes me it is founded on good sense and good logic. They know that there are certain dangers to the sleeping passengers; their experience, common sense, without that, would say that there were dangers. They know that anybody and everybody, provided they are ordinarily respectable looking, can ride in their cars. They know the possibility of robbery, and they, therefore, when they notify you to close your eyes and rest, say to you and me, we will not say you shall not be robbed, but we will say we will exercise a reasonable and ordinary care to protect you from robbery. Applying that principle, you will inquire: Did, or did not, this company, at the time this transaction occurred, on this particular car, do its duty, and if so, did the parties it had employed do their duty in guarding the car that night against just such a robbery as occurred? We have it in evidence that the company has done its whole duty as a company. They require a constant watch to be kept, some person in the body of the car where the sleepers are, watching continuously; Mr. Smithley and the conductor both say that. If watch was kept by one, I apprehend it would be sufficient.

"Of course there are many cases that no protection could guard against. It is apparent that these berths must be made in such a way that the head-boards may be easily moved—slipped out—and, without you would keep a watchman at every berth, there might be some

[Pullman Car Company *v.* Gardner.]

fellow so expert as to be able to move one out and not be
detected, just as many thieves can stand right before your
face and talk to you and at the same time pick your
pocket, and you never suspect it.    It is a sleight of hand
that seems to be peculiar.    Against thefts of that kind
the company are not bound to protect you; but they are
bound to protect you against such thefts as reasonable
care will guard against.    In this case, the evidence sat-
isfies me, and it would seem that is the reasonable con-
clusion from the testimony—that, however, is for the
jury—first, that the regulations of this company were
reasonable and proper.    They kept a guard, according to
their regulations, and intended to keep a continuous
watch, so that a man sitting there could see everything
that was going on without interfering with the sleepers.
He would have no business to be away, except in a spe-
cial case.    They station him at the end of this little aisle,
where he can see the whole length of the car, see anybody
undertaking to crawl from one berth to another, or any-
body in the aisle.    It is lit up sufficiently to be able to dis-
tinguish objects.    These Pullman cars seem to have been
sufficiently manned.    There were five employés altogether.
One man seems to me to have been quite enough at a time
to guard a car in the way that ordinary care would re-
quire it to be guarded.    The conductor says he was awake
in the car till three o'clock, I believe it was, says he was
there continuously and watched continuously.    So far, if
that is true, he must have done his duty.    He left his
post of observation or watch, and put the colored porter
upon guard.    Now, the question for you to determine, if
you find that reasonable care was exercised, as I think it
was, up to that time, is, did this colored man do his duty?
There is no evidence to indicate that he was not a suffi-
ciently proper man.    Therefore, the company would not
be liable for having employed a man not fit for the pur-
pose.    [Did he do his duty?    The regulations required
him to stay in the aisle of the car continuously, to watch
there continuously, until the danger was over—until day-
light.    Did he do it?    If so, where is the evidence of it?
We have his own declarations that he was on guard,
coming from the conductor; but we have also his own
declarations to the plaintiff that he went out of that
apartment for a time to black a pair of boots or shoes.
If he went out of that aisle, even for a very few minutes,
and during that time this robbery occurred, and the jury
believe that if he had been in his place of observation it
would not and could not have occurred without detection,

the company is liable, because he failed to do his duty to that extent that it allowed this robbery to be done. It was his fault, and is visited on the company, although they may have done everything they thought right to get a proper man. 'Watching' is not simply to be on watch nominally, it is to be on watch actually, to be there, not under pretense of continuing there; there till you get tired and then go out and lie down or do something else, and let the very thing occur you are put there to avoid; watching must be continuous and active. He could not watch a car full of sleeping people very well if he were in the front part in those little rooms or ante-chambers, or whatever they are called, where people dress and wash."] (Third assignment of error.)

February 24, 1883, verdict for plaintiff, on which judgment was afterward entered.

The defendant then took a writ of error, assigning errors as above set forth.

*H. W. Weir* for plaintiff in error.

The Pullman Palace Car Company is not an inn-keeper and is not responsible as an inn-keeper for the property of passengers on its cars.

It only undertakes to accommodate a certain class, those who have already paid their fare, and are provided with a first-class ticket, entitling them to ride to a particular place.

It does not undertake to furnish victuals and lodging, but lodging alone.

The traveler is not compelled to accept the additional comfort of a sleeping car; he might have remained in an ordinary car, and there were easy methods within his reach by which both money and baggage could be safely transported. Pullman Palace Car Company *v.* Smith, 73 Ill., 360.

If defendant is responsible for the loss on any other ground, it can only be for the want of exercising ordinary care in the protection of the defendant in error and his personal effects.

The presence of the conductor or porter on watch in the coach-car occupied by Gardner and other passengers during the whole of the night the theft was committed, we submit, would be the exercise of ordinary care and the jury should have been so instructed. But the Court, in that part of the charge embraced in the second assignment of error, went far beyond this and exacted the most

[Pullman Car Company *v.* Gardner.]

extraordinary vigilance. This was more than the law required.

*W. F. McCook* for defendant in error.

The defendant was a bailee for hire, accepting the custody and control of the persons of passengers with such wearing apparel and personal effects as are usual and proper for passengers to have with them.

Defendant, by its contracts, impliedly represented to the public and to the plaintiff that its cars were such in construction and so managed that a person might resign himself to unconscious sleep, and that, whilst in this helpless condition, reasonable provision had been made for the security of his life and personal property.

As a bailee, the defendant comes under the general rule of law and is bound to exercise reasonable care only as to the subject-matter of bailment. That reasonable care varies with circumstances, is greater at night, when the passenger is helpless and asleep, than in daytime, when he is awake and able to protect himself. The defendant was liable only for failure to exercise such ordinary care, and this is a fact for the jury.

Blum *v.* Southern Pullman Palace Car Co., 3 Central Law Journal, 591 ; Bryan *v.* Steamship Co., 34 Leg. Intel., 97 ; Crozier *v.* Boston, N. Y. and Newport Steamboat Co., 43 Howard's Pr., 467.

NOVEMBER 12TH, 1883.—PER CURIAM: We have carefully examined the evidence and considered the assignments of error. Conceding that the company is not liable in this action as an inn-keeper or common carrier, yet a reasonable and proper degree of care is imposed on the company. Whether it did exercise that degree of care under the circumstances was for the jury. The main object in taking passage in such a car is to permit the passenger to sleep. While in that helpless condition, a duty rests on the company to provide reasonable care and precaution against the valuables of a passenger being stolen from his bed or from the clothes on his person. This is not the case of a robbery by force and violence, but by stealthy larceny. Unless a watchman be kept constantly in view of the center aisle of the car, larceny from a sleeping passenger may be committed without the thief being detected in the act. While the fact that another passenger in the same car was robbed the same night was not relevant to prove that the defendant in error was in fact robbed, yet it was admissible as bearing on the

[Stewart *et al. v.* Lindsay *et al.*]

absence of proper care by the company. This case was submitted to the jury in an able and correct charge. We see no error of which the company can complain.

Judgment affirmed.