HERVEY S. DAWLEY *vs.* WAGNER PALACE CAR COMPANY.

Franklin.    September 21, 1897. — October 21, 1897.

Present: ALLEN, HOLMES, KNOWLTON, MORTON, & BARKER, JJ.

*Carrier — Loss of Passenger's Property in Sleeping Car — Action —*
*Negligence — Due Care — Law and Fact.*

A palace car company is bound so to manage its cars as not unreasonably to ex-
pose the property of a passenger to an unusual risk of loss by theft or otherwise.
In an action against a palace car company for the loss of a passenger's property
by theft, if there is evidence that, while a car of the defendant was standing in
the station in a large city in the evening, the porter of the car entered with the
plaintiff, and, after putting his travelling bag and other property on the seat of
the section for which he had a ticket on the side of the car opposite to that on
which passengers were received, opened the window opposite the seat without
request and in violation of a local rule of the defendant, and then left the car,
the question of the defendant's negligence is properly submitted to the jury;
and if it appears that the plaintiff immediately left the car, his wife remaining
behind near the seat, and then walking the length of the car and back again,
sitting down in the section forward of her own, then walking to the platform of
the car to speak to the porter, and then sitting down again in the section for-
ward of and facing her own until the train started, when the loss of the property
was first discovered, the question whether the plaintiff and his wife were in the
exercise of due care, is also rightly submitted to the jury; and it is not the
duty of the judge to instruct the jury that the travelling bag was not in the cus-
tody of the defendant, but of the plaintiff.

CONTRACT, with a count in tort, to recover for the loss of the
plaintiff's property, alleged to have been stolen while the plain-
tiff was riding as a passenger in one of the defendant's cars,
through the negligence of the defendant's servants.   Trial in
the Superior Court, before *Gaskill,* J., who allowed a bill of
exceptions, in substance as follows.

The plaintiff testified that, on June 25, 1894, he purchased a
ticket entitling himself and wife to the use of a section in a sleep-
ing car of the defendant from Chicago to Boston, attached to a
train due to leave Chicago at 10.30 o'clock P. M. ; that, on reach-
ing the car, the porter took the plaintiff's baggage, preceded the
plaintiff, his wife, and a friend into the car, showed them their
section, placed their baggage upon the seat, raised the car window
in presence of the plaintiff and his wife, and then left the car;
that, as they went into the car, the plaintiff's wife remarked,

"It is very close here, very warm here," and the porter replied, "Yes, and we have n't many lights burning either"; that the plaintiff, after the opening of the window and the going out of the porter, left the car with his friend, and did not re-enter it until the train started, when he found his wife sitting in the section in front of their own section; that, on looking for their travelling bag, he found it was not in their section; that he asked for the conductor, a search was made for the bag, but it could not be found; and that he did not, nor did his wife in his hearing, request the porter to open the window.

On cross-examination, he testified that he had previously travelled in sleeping cars of the defendant, and of the Pullman Palace Car Company; that he thought he had always, on the defendant's cars, had a berth or section check similar to the one afterwards put in evidence by the defendant; that he presumed he might at some time have read the "Notice to Passengers" printed on it; that he had seen notices posted in its cars, which he presumed were duplicates of the one afterwards put in evidence by the defendant, but could not state positively; that the travelling bag lost was about eighteen inches long, quite deep, with flexible sides, well filled but not heavily packed; that the porter carried this bag into the car, also a telescope basket, about twenty-two inches long and eighteen inches wide, packed quite full, an umbrella, and, he thought, his overcoat and his wife's coat, and put them down on the seats in their section; that this was about ten o'clock; that, after leaving the car, he did not again see his wife until the train started at half past ten; that the day was one of the hottest he had ever experienced in Chicago, and the evening was very close; and that he did not know whether the porter opened the window for the comfort of himself and his wife or not, but he had since thought that the porter might have had another motive than that.

The plaintiff's wife testified that she preceded the porter in entering the car; that the porter carried in the travelling bag and overcoat which were lost, and nothing else, and placed them in the forward seat of their section; that the porter then took their telescope basket from the plaintiff and placed it on the rear seat, and took from a friend who had entered the car with them a box of cherries and placed it on the rear seat; that as she was

passing through the coach she remarked, " How warm and close
it is here," a general remark made to no one in particular; that
on putting down the articles mentioned the porter opened the
window opposite the forward seat of the section; that she did
not ask him to do so, and made no remark to him, nor he to her;
that she took off her coat and placed it on top of the plaintiff's
on the forward seat; that the porter went out as soon as he had
opened the window, and the plaintiff and his friend also went
out after the porter; that she walked down the length of the car
and back, stopped at her section, took off her gloves and placed
them in her coat pocket; that she then sat down in the section
just forward of her own section, later walked out on to the car
platform and spoke to the porter, then again sat down in the sec-
tion forward of and facing her own, and sat there until the train
started; and that the loss was discovered immediately after.

On cross-examination, she testified that she was not watching
the things, and did not see or notice the lost articles after she
put her gloves in her coat pocket; that the lost articles were
placed on the seat and the window opened afterwards; that the
things must have been stolen while she was on the car platform,
and probably would not have been taken if she had remained in
the car; that, in reply to her remark made on entering the car,
the porter said, " And we have n't many lights burning either ";
that the porter said nothing when he opened the window; that
she was not concerned in having the window open; that she was
suffering from a sore throat; and that she sat elsewhere as the
seats in her husband's section were filled with the bags and other
articles placed there by the porter.

The defendant put in evidence, from a letter written by the
plaintiff to the defendant's superintendent, dated July 2, 1894,
this sentence: " Upon entering the car, we placed our travelling
bag, my wife's coat, and my overcoat on the section which we
were to occupy "; also a ticket issued by the defendant to pur-
chasers of sections containing the following: " Notice to Passen-
gers. Wearing apparel, baggage, or other valuables placed in
the car will be entirely at owner's risk; and employees of this
company are forbidden to take charge of the same." Also a
notice posted in toilet-rooms on the defendant's cars containing
the following: " Notice to Passengers Occupying Sleeping Cars.

This Company will not be responsible for any valuables belonging to passengers." Also the following among other extracts from its rules for employees: " Porters will be expected to take hand-baggage to the cars and sections to which the passengers may be assigned. . . . The employees of this Company must use every possible precaution while on duty to prevent the loss of any property brought into the cars, and while *en route* cars must not be left unguarded at any time for any period, however short. . . . This Company, or its servants, do not undertake to be the custodians or guardians of the personal effects, wearing apparel, or valuables of passengers, yet it should be the duty of every one concerned to use every effort and afford every protection possible. . . . Under no circumstances will baggage, wearing apparel, or other property of passengers be taken charge of by the employees of this Company and put in lockers, state-rooms, or elsewhere, and only such baggage should be allowed as will go under or in berths. The responsibility and care for same rests wholly with the passengers. . . . In warm weather, while receiving passengers, the doors and windows should be thrown open. The subject of ventilation is one that must be governed very much by the condition of the weather and the temperament and disposition of passengers. Conductors and porters must therefore exercise the most careful judgment in the treatment of this subject."

W. H. Bell, a witness for the defendant, testified that he was porter on the car in which the plaintiff had a section on the night in question, and had been so employed since May, 1893; that the ticket put in evidence was a duplicate of one issued to the plaintiff; that the notice put in evidence was posted in the gentlemen's wash-room and ladies' toilet-room in the car in which the plaintiff had a section, and in all other cars of the defendant; that the rules put in evidence were in force on June 25, 1894; that on that night, about 10 o'clock P. M., he took the plaintiff and his wife to their section; that at that time the door at the end of the car opposite the end at which they entered was locked; that the windows opposite the rear seat in each section had a screen in them, so secured that it could not be opened from the outside; that there were no screens for the forward windows; that he carried in the plaintiff's box and a large tele-

scope basket, and nothing else, put the box on the floor, and the basket in the seat, and did not see any travelling bag or overcoat; that the plaintiff's wife said, "How terribly hot it is! could n't there be more ventilation? could n't a window be opened?" that he said, "We don't usually raise the windows on that side for fear something will be taken out"; that she then said, "I will be here, I am not going out"; that he raised the window and went out on to the platform to receive passengers; that in ten or twelve minutes the plaintiff's wife came and spoke to him on the platform in regard to having her berth made up; and that the plaintiff walked up and down the station platform, and no one entered the car other than passengers with tickets.

On cross-examination, he testified that a local rule of the defendant required windows in cars opposite to the side on which the porter was receiving passengers to be closed at Chicago, unless opened at the request of passengers; that the plaintiff's section was on the side opposite to the one on which he was receiving passengers; that he should think there was room in the plaintiff's section to sit down; that the plaintiff's wife did not tell him which window to open; that it was against the rule to open either window in her section except at the request of a passenger; that a general order of the defendant directs its servants to do anything that is pleasing to the passengers; that no rules required him to warn a passenger when opening a window at his or her request, but he did so; that he did not remember whether the plaintiff entered the car with him, but, if he did, he left the car before the witness; and that he did not notice particularly what was on the seat when he went out after raising the window.

The defendant introduced the deposition of O. G. Cannon, who testified that he was, on June 25, 1894, a conductor employed by the defendant, in charge of four cars, including that on which the plaintiff had a section, on the train leaving Chicago at 10.30 o'clock P. M.; that he learned of the plaintiff's loss from the plaintiff, and telegraphed to the defendant's superintendent and sent a written statement of the loss to him; that he had no knowledge of any window being open in the plaintiff's section; and that the plaintiff's section was on the side of the car opposite to that on which passengers were received.

On cross-examination, he testified that the porter was under his control and direction ; that it was a rule of the defendant not to open or leave open the window or windows of its cars while standing in the station at Chicago, unless opened at request, and it was his duty to see that this rule was enforced; and that it was not contrary to his instructions to open or allow any windows to be opened in a car of the defendant while standing in the station at Chicago.

At the close of the evidence the defendant requested the judge to rule that the plaintiff was not entitled to recover. The judge declined so to rule; and the defendant excepted.

The defendant requested the judge to instruct the jury as follows :

" 1. If, when the porter opened the window in the plaintiff's section, the plaintiff or his wife was present, and sitting or apparently about to sit down in said section, and he had no reason to expect that said section would be left unoccupied by either, it was not negligence on his part to leave said window open, and the defendant is not liable.

" 2. It was negligence on the part of the plaintiff, if both he and his wife temporarily and at the same time left their section, knowing that, with the car at rest in a station, an unprotected window, i. e. a window without bars, screen, or watchman, was open in their section, with the plaintiff's property lying on the seat in front of it.

" 3. If the articles lost by the plaintiff were, as he contends, stolen, and taken out of the car through the open window, the defendant is not liable, if the plaintiff or his wife put the articles in the place from which they were stolen, and, knowing that the window was open, left the articles there unguarded by either, or by any person, and if the theft would not have been committed had the plaintiff or his wife remained in their section.

" 4. If the loss of the plaintiff's property would not have happened except for the fact that both the plaintiff and his wife temporarily left their section, with their property in front of and near an open window, the defendant is not liable.

" 5. The articles of the plaintiff placed by him or his wife, or by the porter, in the plaintiff's section, were not in the custody of the defendant, but of the plaintiff."

The judge declined to give any of the instructions requested, and, among other things, instructed the jury as follows:

"This action is brought upon the theory that some duty which the defendant corporation owed to the plaintiff has been violated, and that the plaintiff has been injured in consequence. It is, therefore, important, and is the foundation of the action, to ascertain what was the duty of the defendant corporation to the plaintiff. The defendant is not a common carrier of passengers or of property; it does not insure the safety of its passengers or of the property which they have with them. Its duty is simply this: to exercise reasonable care that the property which is brought by the passenger into its car shall be reasonably secure from injury or theft. In other words, it is not responsible unless it is shown that it was negligent in the care of the property thus brought by the passenger having a ticket into its cars, and the degree of care which must be exercised by it depends upon the circumstances, the place, the knowledge which the officers or servants or agents of the road have with reference to the situation both within the car and without, and upon the general knowledge which the corporation has. It is such care as ought ordinarily to be exercised by ordinarily prudent persons or corporations engaged in similar work under similar circumstances. Now the plaintiff says that here, dealing with it in that light, the duty which the law imposed upon the defendant was not fulfilled; that it was a negligent act upon the part of the servant of the defendant corporation to open the window when the car was standing before its departure, and to leave the property of the plaintiff unguarded. There are two classes of evidence, or rather, two views of the evidence applying to one fact, that as you determine one way or the other may determine this action, and that is with reference to opening of that window. If that window was opened by the servant of the defendant corporation at the request, express or implied, of the plaintiff or of his wife with his knowledge, then the plaintiff cannot recover. . . .

"Now suppose you do not find that, but find that the defendant's servant opened the window without any request, express or implied, then it is admitted that a rule of the defendant corporation was violated by its servant. That is not decisive at all, but it is for you to say whether that act, with the knowledge

upon the part of the servant of the defendant corporation as to the condition in which things were left makes it a negligent act upon the part of the corporation, because, within the general line of his duty, the act of the servant done as in this instance the corporation is responsible for. Now, if you assume, or if you find, that the window was opened without any request, express or implied, upon the part of the plaintiff or his wife with his knowledge, but was opened by the porter, against the rule of the company, then what happened, — and that is material, — what knowledge had the porter at the time he opened that window and left it as to the proximity to that window of any of the property of the plaintiff, and that it was to remain there. It is important for you to ascertain and determine whether all those articles had been placed in that seat or those seats before the porter left. If they had, then he had knowledge that the property of the plaintiff was within the seat against which that window was open. Now, if with that knowledge, then another fact comes in which it is important for you to find as bearing upon this question, and that is, what knowledge had Bell that the plaintiff or his wife was to remain there and care for the property ? If you are satisfied that any such declaration was made by the plaintiff's wife as Bell testifies to, that she was going to remain there, then to that extent the defendant was relieved of the obligation of care. Because with the knowledge of the situation by the plaintiff and his wife, that the window was open, that their property was there, and the assumption by them that they would remain and care for it, it cannot be said under those circumstances that the departure of Bell, the servant of the defendant corporation, having opened a window, was a negligent act' on the part of the defendant corporation, and I instruct you as a matter of law with reference to that.

" Now, the plaintiff cannot recover if his own want of proper care contributed to his loss. Two things must conspire in order that the plaintiff shall recover, one which I have already dealt with, the failure to perform its duty by the defendant, placed upon it by the law ; and secondly, what I am about to come to, careful conduct upon the part of the plaintiff. Now, whatever you find with reference to the fact, whether that window was opened at the request of the plaintiff or not, this is true, as I

understand it, that it was opened with the knowledge of the plaintiff, and that either the plaintiff himself, or Bell, the servant of the defendant, with the knowledge of the plaintiff, placed the plaintiff's property in the seat against which that window was opened. Now, take that situation, with knowledge upon the part of the plaintiff that his property is there and that the window is open, what is the situation? Was it a negligent act for him to go out and leave the property? There is no evidence, as I understand, that he went out and left no one within the car. There is no dispute that his wife was within the car or at its end during all the time from the first entrance until after the property was missed. Now, was it a negligent act upon her part, with the knowledge of the situation, to take a seat out of her own section or not? What would people of ordinary intelligence and understanding under similar circumstances do? If she took a seat in the next section where she could view that window and where she could see the coats hanging over the back of the seats, if she had been looking would she have seen that property taken or not? Now, although it was true, it is a question perhaps for you to say exactly in whose custody that property was; it may have been partly in the custody of each. Possibly it was in the custody of the defendant company simply in this view, that it was within the car over which the company had control. But did the plaintiff surrender control of his property to the defendant company, or did the defendant company assume the exclusive control of that property and care of it? Those are matters, of course, for your consideration under the conditions you find existing, and if upon either branch of the case the plaintiff fails to satisfy you by a fair preponderance of the evidence, then your verdict must be for the defendant."

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*F. L. Greene,* (*W. A. Davenport* with him,) for the defendant.

*E. S. Hall,* for the plaintiff.

KNOWLTON, J. The general propositions of law applicable to this case are not in dispute. The questions raised depend for their determination upon the view to be taken of the facts in their relation to the principles of law established in like cases. It is agreed that the plaintiff's travelling bag was not in the cus-

tody of the defendant in such a sense as to create the ordinary
liability of common carriers of merchandise, and the jury were
so instructed.     *Lewis* v. *New York Sleeping Car Co.* 143 Mass.
267, 273.    On the other hand, upon the view of the relations of
the parties most favorable to the defendant, the defendant was
under some obligation to the plaintiff in reference to his property.
It was bound so to manage its car as not unreasonably to expose
the plaintiff's property to an unusual risk of loss by thieves or
otherwise.   The evidence of negligence on the part of the defend-
ant was slight, but we think it entitled the plaintiff to go to the
jury.   The defendant's servant, after putting the plaintiff's
travelling bag and other articles in a seat on the side of the car
opposite to that on which passengers were received, opened the
window opposite the seat.    The jury might have found that he
did this without request from anybody, in violation of a rule of
the company which forbids the opening or leaving open of a
window or windows of its cars opposite to the side on which the
porter is receiving passengers while standing in the station at
Chicago, unless opened at request.    It was done at about ten
o'clock in the evening.    The jury might have found, from the
existence of this rule, that there were peculiar risks at that place,
from lack of light or from other causes, and that the violation of
the rule by the defendant's servant was an act of negligence that
exposed the plaintiff's property to a peculiar risk, which the
plaintiff did not know or appreciate.

The jury might have found that the plaintiff was in the exer-
cise of due care.   It was a question of fact whether the plain-
tiff was negligent in leaving the car while his wife remained
near the seat, and it was also a question of fact whether she was
negligent in walking down the length of the car and back again,
and in sitting down in the section forward of her own, and in
walking to the platform of the car to speak to the porter and
then sitting down again in the section forward of her own, and
facing toward her own, and sitting there until the train started.
The jury might well believe that she was in a position to exer-
cise reasonable care and vigilance in reference to possible thefts
by persons in the car, and that she and the plaintiff had reason
to believe, from the act of the porter in opening the window
opposite the seat, that there was little or no danger of the taking

of the travelling bag by a person outside, on account of the presence of the servants of the defendant, or of other trainmen or officers about the station.

For the reasons stated above, the judge rightly refused to instruct the jury that it was not negligence for the porter to open the window if the plaintiff or his wife were sitting or about to sit in the section, and if he had no reason to expect that the section would be left unoccupied by either of them. He opened the window about half an hour before the time for the train to start, and if the plaintiff or his wife were sitting or about to sit there, his having no reason to expect that they would leave the section unoccupied would not be equivalent to an assurance, or even an affirmative belief, that they would remain in that section constantly for half an hour.

The next three requests for instructions were rightly refused, for the reasons stated above, in connection with the question whether the plaintiff and his wife were in the exercise of due care.

It was not the duty of the judge to instruct the jury that the travelling bag was not in the custody of the defendant, but of the plaintiff. The jury were instructed that there was no such custody by the defendant as to create the ordinary liability of a common carrier. The relations of the respective parties to the property at this time were all in evidence, and were matters of fact to be determined by the jury. Whether the travelling bag was strictly in the custody of the plaintiff or not was of no consequence except as a part of the evidence. The judge was not called upon to instruct the jury as to the effect of the evidence in this particular. If it was in the custody of the plaintiff rather than that of the defendant, the defendant was still in such relation to it as to owe certain duties to the plaintiff in reference to the management of its car. The questions arising on the testimony were questions of fact, which were submitted to the jury under proper instructions.

*Exceptions overruled.*