(27 Misc. Rep. 508.)

## WILLIAMS v. WEBB.

(Supreme Court, Appellate Term. May 24, 1899.)

1. SLEEPING-CAR COMPANIES—LOSS OF PASSENGER'S PROPERTY—LIABILITY.
    Sleeping-car companies are not liable, as common carriers of goods and
    innkeepers, for the property of their passengers.
2. SAME.
    The ground of their liability rests solely in negligence.
3. SAME.
    They are negligent if they fail to so manage their cars as to unreason-
    ably expose the property to an unusual risk of loss by thieves, by failing
    to maintain a watch while the passengers are sleeping.
4. SAME—LOSS OF MONEY—MEASURE OF DAMAGES.
    A sleeping-car company is liable for no greater sum of money lost by a
    passenger through its negligence than such as is necessary to defray the
    expenses of the trip, taking into consideration his station in life, the
    length, duration, and purposes of the journey, and the probable emergen-
    cies that may be expected to arise on the route.
5. SAME—EVIDENCE.
    The fact that a passenger had a sum of money which he expected would
    be sufficient for the exigencies of the journey, in a separate purse from
    money that was stolen, does not conclusively show that he is not entitled
    to recover any part of the stolen money.

Appeal from city court of New York, general term.

Action by Ernest Williams against William Seward Webb, as
president of the Wagner Palace-Car Company. From a judgment
of the general term reversing a judgment for plaintiff and dismissing
the complaint (49 N. Y. Supp. 1111), he appeals. Modified.

Argued before FREEDMAN, P. J., and MacLEAN and LEVEN-
TRITT, JJ.

Herbert H. Walker, for appellant.
Edwin D. Worcester, Jr., for respondent.

LEVENTRITT, J. In the fall of 1894, Richard W. Bates, plain-
tiff's assignor, who had theretofore carried on business as an architect
and interior decorator in the city of Chicago, decided to transfer his
business and residence to the city of Boston. After consummating
his arrangements, he proceeded to Detroit, where he purchased from
the Michigan Central Railway Company a ticket to New York, and
from the defendant company a ticket entitling him to a berth on
the sleeper "Waterford." Prior to his departure from Chicago, he
drew from the bank his balance of $1,250, receiving two $500 bills,
two $100 bills, and a $50 bill. When he boarded the sleeping car at
Detroit, this money was securely fastened, by means of a safety pin,
in the fob pocket of his trousers. It being his intention to open a

bank account with this entire sum upon his arrival in Boston, he exercised more than the usual care in keeping this money distinct and separate from a small fund carried in his purse in another pocket, and which he intended to devote to the incidental expenses of his journey. Immediately before retiring, he counted the $1,250, restored the bills to his pocket, secured as before, and placed his trousers in the berth between the mattress and the side of the car. He had occasion to arise during the night, and, without examining his trousers, proceeded to the toilet. He claims that the only employés in the car at the time were two colored porters, who were sitting at the rear of the car, near the gentlemen's toilet, and that both were asleep. Returning to his berth, he slept the balance of the night. He left the sleeping car in the morning without further examination of his trousers, and proceeded forthwith to the Fall River Steamboat Line, to purchase a ticket and secure a stateroom for Boston. Discovering that his purse contained only five dollars, a sum insufficient to pay for his passage, stateroom, and incidental outlays, he states that he had recourse to his fob pocket, removed the safety pin, and found that his money had been stolen, and a wad of toilet paper substituted. This action was brought to recover for the loss of that $1,250. Upon an appeal from a judgment for the full amount, the general term of the city court reversed the judgment, and dismissed the complaint on the merits. From that determination the plaintiff appeals.

Two questions are presented for review: First, to what extent is the defendant liable; second, was the general term of the city court justified in dismissing the complaint on the merits.

The determination of the first question depends on the obligation which rested on the defendant arising out of the relation of the defendant as a sleeping-car company and the plaintiff's assignor as a passenger. While the principles of law governing the reciprocal rights and duties of sleeping-car companies and their passengers are, owing to the comparatively recent introduction of such sleeping accommodations, still in a state of development, certain rules applicable to the case at bar must, by the weight of authority in this and other states, be regarded as definitely settled. Sleeping-car companies are not insurers of the baggage, money, or other personal effects of a passenger, and courts have almost universally refused to impose upon them the absolute liability attaching to innkeepers and common carriers of goods. Carpenter v. Railroad Co., 124 N. Y. 53, 26 N. E. 277; Blum v. Car Co., 1 Flip. 500, Fed. Cas. No. 1,574; Car Co. v. Smith, 73 Ill. 360; Car Co. v. Diehl, 84 Ind. 474; Lewis v. Car Co., 143 Mass. 273, 9 N. E. 615; Root v. Car Co., 28 Mo. App. 199; Car Co. v. Adams (Ala.) 24 South. 921; Belden v. Car Co. (Tex. Sup.) 43 S. W. 22; Falls River & Machine Co. v. Same, 6 Ohio Dec. 85; Car Co. v. Gardner, 3 Penny. 78. Though the contrary doctrine, imposing this onerous common-law liability, has been enunciated (Car Co. v. Lowe, 28 Neb. 239, 44 N. W. 226), yet we think that it fails to recognize that the introduction of this modern convenience of travel has created novel relations between carrier and passenger unknown to the common-law, and which, were they disregarded for the purpose of enforcing that rigorous obligation, would oftentimes work both hardship

and injustice. The accommodation furnished on a sleeping car is unlike that provided by an innkeeper. In place of a private room, safe from intrusion and for the guest's exclusive use, the passengers on a sleeping car all occupy one common room, with sections containing an upper and a lower berth, on either side of a central aisle, and separated therefrom merely by curtains. Not only does this arrangement of the car forbid absolute privacy and security, but the company cannot exclude persons not in its employ from using the common passageway, and interfering to some extent with the passengers. It must admit the employés of the railroad company to collect fares and control the movements of the train, and it cannot prevent ejectment for nonpayment of fares. While the law, however, does not make a sleeping-car company the insurer of the effects of the occupants of its berths, it does not absolve it from all liability. But the ground of this liability rests simply and solely in negligence. Carpenter v. Railroad Co., 124 N. Y. 53, 26 N. E. 277; Sessions v. Railroad Co., 78 Hun, 541, 29 N. Y. Supp. 628; Car Co. v. Gardner, 3 Penny. 78; Dawley v. Car Co., 169 Mass. 315, 47 N. E. 1024. The very powerlessness of the passenger, and the impossibility of his retaining manual control or possession of his wearing apparel, valuables, or money while asleep, imposes a duty of active watchfulness on the car proprietor, for the violation of which the law will compel it to respond in damages. The contract for the sale of a berth ticket involves the implied invitation to sleep, and, reasonably, the implied agreement to guard property from depredations by theft, by the exercise of a degree of vigilance commensurate with the danger to which the passenger is exposed. A sleeping-car company is bound to maintain a reasonable watch during the night while the passenger is asleep, or using the necessary conveniences of the car, and it is bound so to manage its car as not unreasonably to expose his property to an unusual risk of loss by thieves or otherwise.

In the case at bar sufficient evidence of negligence was introduced to raise a question of fact for the jury whether or not the defendant was remiss in its duty to the plaintiff. The latter testified that when he went to the toilet the only two employés present in the coach were asleep. The jury evidently believed the plaintiff's version, and found in his favor in the sum of $1,250.

While, however, the defendant is liable under this finding of the jury, it is not answerable for the full amount awarded the plaintiff, and the verdict should have been set aside as excessive. We think that the liability of the defendant for the negligent loss of the plaintiff's money should be limited to that imposed on a common carrier for the loss of a traveler's baggage. While the ground of the common carrier's liability arises primarily out of the fact of its custody of the baggage (Merrill v. Grinnell, 30 N. Y. 594), and while the sleeping-car company's liability is predicated on negligence, yet, in both cases, the same rule as to the extent of the liability should govern. Shear. & R. Neg. (5th Ed.) § 526; Hampton v. Car Co., 42 Mo. App. 134; Blum v. Car Co., 1 Flip. 500, Fed. Cas. No. 1,574. The reasons underlying the limitation of a common carrier's liability to money necessary for the payment of the journey undertaken are—First, that

no additional compensation is made for the transportation of money in excess of such sum, or for the increased risk incurred; and, second, the justice of protecting the carrier against fraudulent and collusive claims that might be foisted upon him by dishonest and unscrupulous travelers. In the case of a sleeping-car company, money carried on the person of one contracting for sleeping privileges being in no sense in its custody (Carpenter's Case, supra; Lewis v. Car Co., 143 Mass. 267, 9 N. E. 615), the small fee paid for a berth constitutes compensation simply for the accommodation and the attendant watchfulness the company impliedly agrees to furnish; and, though its responsibility rests solely in negligence, it should not be exposed to the hazard of false or exaggerated claims, which designing men may attempt to enforce. This limitation of liability need work no hardship on the traveler, as he can protect himself against loss by sending per express the money in excess of the requirements of his trip, or by availing himself of banking facilities, such as purchasing a draft on some banking house at the place of his destination. In our opinion, the reasonable and just rule is: Where money is lost by the occupant of a berth in a sleeping car through the negligence of the company, and without any contributory fault on his part, the amount of recovery is limited to such sum as, under the particular circumstances of each case, is reasonably necessary to defray the expenses of his trip, taking into consideration his station in life, the length, duration, and purposes of his journey, as well as the probable emergencies that may be expected to arise en route.

While we find no case in the courts of this state defining a sleeping-car company's liability under a state of facts similar to that here disclosed, there is abundant authority in other jurisdictions for the rule announced. In Barrott v. Car Co., 51 Fed. 796, the plaintiff, traveling from Hoboken, N. J., to Binghamton, N. Y., was robbed of the sum of $4,114, which he carried in an envelope in an inside vest pocket, and which he purposed devoting to the purchase of cattle. He also had $35 or $40 in a purse for use on his journey. Recovery of the $4,114 was not permitted on the theory that it was not necessary to provide for his wants and comforts during his contemplated journey. In Wilson v. Railroad Co., 32 Mo. App. 682, the plaintiff, traveling from Franklyn, N. Y., to Benton, Ark., where he intended purchasing a farm, carried two pocketbooks, one in his trousers pocket, containing money sufficient to defray the outlays of his journey, and another in his inside vest pocket, containing $670, which he placed under his pillow at night. The latter sum was stolen, and, though there was evidence of negligence on the part of the company, a verdict for that amount was set aside, on the ground that the defendant could not be held liable for a greater sum than was reasonably necessary for traveling expenses. To like effect are Hillis v. Railroad Co., 72 Iowa, 228, 33 N. W. 643; Blum v. Car Co., supra; Root v. Car Co., supra; Pfaelzer v. Car Co., 4 Wkly. Notes Cas. 240; Car Co. v. Gaylord, 23 Am. Law Reg. (N. S.) 788.

In the case at bar, the evidence of the plaintiff unmistakably discloses that he was carrying the $1,250 in the fob pocket of his trousers, as a separate fund, with the intention of depositing it in a bank

in Boston, and without expectation of being obliged to resort to it for any of the purposes of the journey. It is clear that he anticipated that the money in his purse would suffice to take him to his destination, and while this division is strongly indicative of his estimate of the amount necessary for his journey, and affords perhaps a cogent argument as to the true measure of the defendant's liability, yet, under the rule laid down, it is not conclusive, and the plaintiff is not estopped from proving miscalculation on his part of the pecuniary demands of his trip. The fact that he was compelled to resort to his separate fund makes it evident that he did miscalculate. Under all the circumstances of the case, it was for the jury to say what portion, if any, of the $1,250 was required to complete his journey to Boston, and therefore in what sum the defendant was liable. Merrill v. Grinnell, 30 N. Y. 534; Railroad Co. v. Fraloff, 100 U. S. 24; Root v. Car Co., 28 Mo. App. 199.

Our conclusion, then, is that the general term of the city court properly reversed the judgment, but that it erred in dismissing the complaint on the merits. It is not clear that, on a new trial, the plaintiff could not establish the right to some recovery, and final judgment should therefore not have been directed against him. Iselin v. Starin, 144 N. Y. 453, 39 N. E. 488; Benedict v. Arnoux, 154 N. Y. 715, 49 N. E. 326. The judgment of the general term of the city court must be modified so as to grant a new trial.

Judgment affirmed in so far as it reverses the judgment of the trial term, but reversed in so far as it dismisses the complaint on the merits, and a new trial is ordered, without costs of this appeal to either party. All concur.